# CHRISTOPHER B. KENNEDY *v.* LEANNA L. KENNEDY
## (AC 29059)

DiPentima, Beach and Peters, Js.

Argued November 20, 2008—officially released May 5, 2009

*Christopher B. Kennedy*, pro se, the appellant (plaintiff).

*Ira A. Jacobs*, for the minor child, Kathleen Kennedy.

*Jacqueline A. Wilson* filed a brief for the minor child, Brenna Kennedy.

*Opinion*

PETERS, J. A judgment of civil contempt is improper if "the contemnor, through no fault of his own, was unable to obey the court's order." (Internal quotation marks omitted.) *In re Leah S.*, 284 Conn. 685, 692, 935 A.2d 1021 (2007). Accordingly, "a court may not find a person in contempt without considering the circumstances surrounding the violation to determine whether such violation was wilful." *Wilson* v. *Wilson*, 38 Conn. App. 263, 275–76, 661 A.2d 621 (1995). In this highly contentious family litigation,[1] the plaintiff's principal claim on appeal is that, because protective and

---

[1] See *Kennedy* v. *Kennedy*, 83 Conn. App. 106, 847 A.2d 1104, cert. denied, 270 Conn. 915, 853 A.2d 530 (2004); *Putman* v. *Kennedy*, 273 Conn. 913, 870 A.2d 1080 (2005) (granting of certification following Appellate Court dismissal without opinion); *Putman* v. *Kennedy*, 273 Conn. 915, 870 A.2d 1083 (2005) (same); *Kennedy* v. *Kennedy*, 88 Conn. App. 442, 869 A.2d 1252, cert. denied, 275 Conn. 902, 882 A.2d 671 (2005); *Kennedy* v. *Kennedy*, 92 Conn. App. 902, 884 A.2d 23 (2005); *Putman* v. *Kennedy*, 279 Conn. 162, 900 A.2d 1256 (2006); *Kennedy* v. *Putman*, 97 Conn. App. 815, 905 A.2d 1280 (2006); *Kennedy* v. *Kennedy*, 282 Conn. 916, 924 A.2d 138 (2007) (denial of certification following Appellate Court dismissal without opinion); *Putman* v. *Kennedy*, 104 Conn. App. 20, 932 A.2d 439 (2007); *Putman* v. *Kennedy*, 104 Conn. App. 26, 932 A.2d 434 (2007), cert. denied, 285 Conn. 909, 940 A.2d 809 (2008); *Kennedy* v. *Kennedy*, 284 Conn. 921, 933 A.2d 721 (2007) (denial of certification following Appellate Court dismissal without opinion); *Kennedy* v. *Kennedy*, 109 Conn. App. 591, 592 n.1, 952 A.2d 115 (2008).

restraining orders prohibited him from having "any contact in any manner" with the defendant, his former wife, the trial court improperly found that he wilfully had failed to honor his obligation to notify her that he had obtained employment. We agree and vacate the contempt judgment against him, although we affirm a second order with respect to his visitation rights.

By a court order entered on May 7, 2002, the marriage between the pro se plaintiff, Christopher B. Kennedy, and the defendant, Leanna L. Kennedy, was dissolved in accordance with the parties' separation agreement. Thereafter, their original plan for joint custody and shared parenting of their three children[2] was superseded by a court order of February 4, 2003, that made the defendant the primary custodian and gave the plaintiff visitation rights. On numerous occasions since that date, the plaintiff has filed motions for modification of custody and for unsupervised visitation. Although considerable and protracted litigation has expanded substantially the plaintiff's access to his daughters; see *Kennedy* v. *Kennedy*, 109 Conn. App. 591, 597 n.10, 952 A.2d 115 (2008); at the time the visitation orders challenged in this appeal were entered, he had not yet obtained all of the visitation rights he claimed were warranted.

Two separate rulings by the trial court, *Shluger, J.*, are before us in this appeal. The plaintiff contests the court's orders (1) finding him in contempt for failure to disclose his employment as stipulated in a postdissolution agreement by the parties and (2) declining to award him unsupervised visitation rights with their daughters. In addition, the plaintiff maintains that the court engaged in unlawful discrimination by failing, sua

---

[2] Because one of the children is no longer a minor, the visitation issues now concern only the parties' two daughters.

sponte, to make accommodations to his attention deficit disorder disability. We address each of these three claims separately.

I

## CONTEMPT

On January 18, 2007, the defendant filed a motion for contempt alleging that the plaintiff had failed to comply with their stipulated postdissolution agreement of May 17, 2004, that "each party will notify the other when he or she obtains employment." At the hearing on this motion, the plaintiff acknowledged that he had failed to inform the defendant that, for two years, he had been employed by Pratt & Whitney Aircraft as an engineer with an approximate salary of $65,000. The court found that the party's agreement was "clear and understandable," and that the plaintiff's failure to provide this information was a wilful violation of it. It rejected the plaintiff's defense that he was uncertain "if he could or how" to notify her, finding instead that he "had a financial motivation" for neglecting to inform the defendant of his employment. Despite its finding of wilfulness, however, the court imposed no sanction on the plaintiff. On July 16, 2007, the court denied the plaintiff's motion to reconsider.

Without contesting most of the court's findings of fact, the plaintiff contends that the court improperly found his nondisclosure to be wilful. His principal claim reiterates the argument that he made at trial that the judicially imposed constraints on his contact with the defendant made it improper to find fault with his failure to comply with the postdissolution agreement. In the alternative, the plaintiff argues that the contempt order contravened the facts on record because the defendant had admitted facts in her pleadings that attested to her having known that he was employed prior to filing her motion for contempt.

## A

Although the briefs submitted in this appeal do not address the issue, "mootness implicates this court's subject matter jurisdiction and is a threshold matter for resolution." *Monsam* v. *Dearington*, 82 Conn. App. 451, 455, 844 A.2d 927 (2004). The issue of mootness is implicated in this case because the trial court imposed no penalty on the plaintiff and he, therefore, cannot obtain practical relief if we vacate the court's contempt judgment.

Whether our judgment can afford practical present relief to the plaintiff is not dispositive of mootness, however, if "there is a reasonable possibility that prejudicial collateral consequences will occur" as a result of the judgment. (Internal quotation marks omitted.) *Putman* v. *Kennedy*, 279 Conn. 162, 169, 900 A.2d 1256 (2006) (lapse of restraining order does not moot appeal due to collateral consequences). Our jurisprudence establishes that "a contempt finding has collateral consequences . . . unless or until it is vacated or rendered invalid." *Kendall* v. *Pilkington*, 253 Conn. 264, 278 n.7, 750 A.2d 1090 (2000). Even without the imposition of a penalty, the fact that a trial court has made a finding of contempt may well affect a later court's determination of the penalty to be imposed after a future finding of contempt. *Sgarellino* v. *Hightower*, 13 Conn. App. 591, 594–95, 538 A.2d 1065 (1988). In this case, the record describing the plaintiff's employment suggests that he may need to maintain a security clearance that may well be adversely affected by a judgment of contempt. We are persuaded, therefore, that, because of the reasonable possibility of adverse consequences, we have jurisdiction to consider the merits of the court's contempt order.

## B

The plaintiff claims that the court improperly found that he had acted wilfully in failing to apprise the defendant of his employment directly because outstanding

judicial protective and restraining orders forbade him to have "any contact in any manner" with her. We agree.

"[O]ur analysis of a [civil] judgment of contempt consists of two levels of inquiry. First, we must resolve the threshold question of whether the underlying order . . . was sufficiently clear and unambiguous so as to support a judgment of contempt. . . . This is a legal inquiry subject to de novo review. . . . Second, if we conclude that the underlying court order was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding." (Internal quotation marks omitted.) *Zoll* v. *Zoll*, 112 Conn. App. 290, 303, 962 A.2d 871 (2009), quoting *In re Leah S.*, supra, 284 Conn. 693–94. In this case, because the separation agreement between the parties unambiguously required that "each party will notify the other when he or she obtains employment," we need address only the trial court's finding of wilfulness.

"Contempt is a disobedience to the rules and orders of a court which has power to punish for such an offense." (Internal quotation marks omitted.) *Edmond* v. *Foisey*, 111 Conn. App. 760, 769, 961 A.2d 441 (2008). Nonetheless, "[n]oncompliance alone will not support a judgment of contempt." (Internal quotation marks omitted.) *Prial* v. *Prial*, 67 Conn. App. 7, 14, 787 A.2d 50 (2001). "[A] court may not find a person in contempt without considering the circumstances surrounding the violation to determine whether such violation was wilful." *Wilson* v. *Wilson*, supra, 38 Conn. App. 275–76. A judgment of civil contempt is improper if "the contemnor, through no fault of his own, was unable to obey the court's order." (Internal quotation marks omitted.) *In re Leah S.*, supra, 284 Conn. 692.

In support of the plaintiff's claim that his noncompliance with his disclosure obligation was not wilful, he testified that he was uncertain "if he could or how" to contact the defendant without being arrested, at least while protective and restraining orders were pending against him. Although no such orders were outstanding when the defendant filed her motion for contempt on January 18, 2007,[3] they had been in effect for most of the time encompassed by the notification agreement. Even though all of the "no contact" orders had been removed by October, 2006, the court restated, in its memorandum of decision of June 26, 2007, that "no contact whatsoever should be permitted" between the parties.[4] At the very least, therefore, the plaintiff had been faced repeatedly over the course of this litigation with contradictory judicial directives that he both notify the defendant of his employment and yet have no contact whatsoever with her. The plaintiff thus had received mixed signals from the court about how he

[3] In an October 2, 2006 hearing on an earlier proceeding in this case, the plaintiff testified as follows:

"The Court: What happened to your criminal case? Is that open?

"[The Plaintiff]: Every case has been resolved. It has been dismissed or I have been acquitted.

"The Court: So, the protective order is from this court . . .

"[The Plaintiff]:—there is no protective order—there is no protective order in any court in the state. No restraining order, no criminal case, my record is clean."

[4] We note that the plaintiff claimed, in his motion to reconsider, that the defendant's counsel in the trial court, Susan Boyan, has "refused to communicate" with him about this case, either by mail or by telephone, and has "threaten[ed] him with trespassing and arrest if he attempts to drop off legal documents at her office . . . ." He also claims that two attorneys he retained to contact Boyan confirm that she "refuses to communicate or respond to issues in this case." Although the memorandum of decision contains no findings as to these claims, and the court dismissed the plaintiff's motion to reconsider without comment, the defendant neither opposed the motion to reconsider, nor contested these allegations on appeal, despite having filed an appearance. Under our rules of practice, "[e]very material allegation in any pleading [that] is not denied by the adverse party shall be deemed to be admitted . . . ." Practice Book § 10-19. We cannot say, therefore, that the plaintiff was able to contact the defendant through her attorney.

should conduct himself with respect to the defendant. We are persuaded that such contradictory directives undermine the finding that the plaintiff's noncompliance with the reporting requirement was wilful. "The inability of [a party] to obey an order of the court, without fault on his part, is a good defense to a charge of contempt." *Tobey* v. *Tobey*, 165 Conn. 742, 746, 345 A.2d 21 (1974). Under these circumstances, the judgment of contempt must be vacated. See *Wilson* v. *Wilson*, supra, 38 Conn. App. 275–76.

## C

In the alternative, the plaintiff claims that the court improperly found him in contempt "against the facts and findings" in the record because the defendant had independently learned of his employment before she filed her motion for contempt. For two reasons, we need not pursue this claim. First, the record does not disclose that it was addressed by the trial court. Second, there is no need to undertake a further examination of a contempt order that we have already determined must be set aside.

## II

## VISITATION

The plaintiff's second claim on appeal challenges the court's failure to afford him the unrestricted visitation rights that he sought in his October 17, 2006 motion for modification of custody and visitation. Although this order increased his rights of visitation with his two daughters, it failed to grant his request for unsupervised visitation. According to the plaintiff, this order violated his fundamental liberty interest under the federal constitution in the nurture, upbringing, companionship, care, and custody of his children.[5] We do not agree.

[5] We note that the plaintiff does not seek to restore the original joint custody and shared parenting plan in the separation agreement that was incorporated into the order dissolving the parties' marriage in 2002. In this appeal, he challenges only the court's requirement that his visitation be supervised.

Before addressing the merits of the plaintiff's second claim, we must determine whether judicial rulings subsequent to the specific order on appeal have rendered the order moot and thus have deprived us of subject matter jurisdiction to consider his claim. *Monsam* v. *Dearington,* supra, 82 Conn. App. 455. The record establishes that subsequent judicial modification of the plaintiff's parental rights has expanded these rights so that they now include unsupervised visitation.[6] The plaintiff, therefore, cannot obtain practical relief if we reverse the June 26, 2007 order from which he appeals. "It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow." (Internal quotation marks omitted.) *Dutkiewicz* v. *Dutkiewicz,* 289 Conn. 362, 366, 957 A.2d 821 (2008). "When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." *In re Romance M.,* 229 Conn. 345, 357, 641 A.2d 378 (1994).

Nevertheless, "[t]he mootness doctrine does not preclude a court from addressing an issue that is capable

---

[6] Subsequent to the court's two June 26, 2007 decisions that are directly at issue in this appeal, the court's expansion of the plaintiff's visitation rights has included the following: On September 5, 2007, the court granted the plaintiff "unsupervised visits for the first time in several years." On November 15, 2007, the court expanded the Wednesday visits and extended an unsupervised visit on the day after Christmas to eight hours. On January 11, 2008, the court granted the plaintiff an additional eight hour unsupervised visit with his daughters. *Kennedy* v. *Kennedy,* supra, 109 Conn. App. 597 n.10. Most recently, the court on February 26, 2008, continued the incremental expansion of the plaintiff's access to his children by removing Kidsafe as supervisor of the visits, and by adding one weekend per month to his visitation schedule. See *Kennedy* v. *Kennedy,* Superior Court, judicial district of Tolland, Docket No. FA-01-0075660-S (February 26, 2008).

of repetition, yet evading review." (Internal quotation marks omitted). *Dutkiewicz* v. *Dutkiewicz*, supra, 289 Conn. 367, quoting *Loisel* v. *Rowe*, 233 Conn. 370, 378, 660 A.2d 323 (1995).[7] "[F]or an otherwise moot question to qualify for review under the capable of repetition, yet evading review exception, it must meet three requirements. First, the challenged action, or the effect of the challenged action, by its very nature must be of a limited duration so that there is a strong likelihood that the substantial majority of cases raising a question about its validity will become moot before appellate litigation can be concluded. Second, there must be a reasonable likelihood that the question presented in the pending case will arise again in the future, and that it will affect either the same complaining party or a reasonably identifiable group for whom that party can be said to act as surrogate. Third, the question must have some public importance. Unless all three requirements are met, the appeal must be dismissed as moot." (Internal quotation marks omitted.) *Dutkiewicz* v. *Dutkiewicz*, supra, 367.

The facts in the record before us fail to satisfy the first requirement of this three part test. It is true that child custody and visitation orders are peculiarly subject to repeated modification with the changing circumstances of the parents' lives, until they are mooted permanently when the children in question reach adulthood. See General Statutes § 46b-56 (court may modify visitation order "at any time" after return date for dissolution of marriage complaint). In the present case, appellate review of the plaintiff's constitutional claim was potentially mooted by each incremental expansion

---

[7] Although this court did not address the mootness exception in *Kennedy* v. *Kennedy*, 109 Conn. App. 599–600, that case was decided before our Supreme Court, in *Dutkiewicz* v. *Dutkiewicz*, supra, 289 Conn. 370–71, clarified the applicability of the "capable of repetition but evading review" analysis to constitutional claims concerning fundamental parental rights.

of his visitation rights. It is not clear, however, that court orders requiring supervised visitation are by their "very nature" of so limited a duration that a substantial majority of cases challenging their constitutionality will become moot before they can receive appellate review. Although continually subject to modification, such orders may remain in place a decade or more until the children reach the age of majority. We conclude, therefore, that, we do not have jurisdiction to address the merits of the plaintiff's constitutional claim, as later judicial orders that removed the supervision restriction on the plaintiff's visitation rights have made that claim moot.[8]

[8] Even if the plaintiff's claim were not moot, it would founder substantively on a fundamental misconception of the scope of the case law on which it relies, chiefly *Troxel* v. *Granville*, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000), and *Roth* v. *Weston*, 259 Conn. 202, 789 A.2d 431 (2002). Those decisions recognized that "[t]he family entity is the core foundation of modern civilization. The constitutionally protected interest of parents to raise their children without interference undeniably warrants deference and, absent a powerful countervailing interest, protection of the greatest possible magnitude." *Roth* v. *Weston*, supra, 228.

As our Supreme Court explained in *Dutkiewicz* v. *Dutkiewicz*, supra, 289 Conn. 373, however, the fact that a governmental ruling impinges on a parent's relationship to his children does not, without more, suffice to establish that the parent has suffered a constitutionally cognizable claim. The cases in which the United States Supreme Court or our Supreme Court have concluded that "government interference with a parent's right to raise his or her child"; id.; violated parental due process rights have all done so in the context of governmental action that diminished the rights of parents at the instance of a *state actor* or of an individual who is a *nonparent*. Under such circumstances, the cases cited by the plaintiff hold that "a *parent's* decision with respect to the care, custody and control of his or her child cannot be overridden *by the state* in the absence of a showing that the parent is unfit or that the parent's decision will jeopardize the health or safety of the child, or will have a potential to impose significant social burdens." (Emphasis added.) Id., 378.

Those cases shed no light on custody disputes *between* parents because each parent has an equal and undiminished constitutional right to make reasoned decisions about the welfare of his or her minor children. Although constitutional rights to procedural due process apply to intrafamily legal disputes about custody and visitation, as they do to all litigation, the case law on which the plaintiff relies does not give him a greater substantive

## III

## DISABILITY

Finally, the plaintiff claims, as a matter of law, that the court violated his statutory rights under the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq., by conducting the hearings on the contempt and visitation motions without providing accommodation to his attention deficit disorder. Because we have vacated the contempt judgment, we need not consider the plaintiff's disability claim with respect to that proceeding. The question remains, however, whether the plaintiff is entitled to review of the visitation order on this ground. We conclude that he is not.

The plaintiff claims that the visitation order resulted from a biased judicial analysis of its merits. He maintains that the court "expressed its bias against his motion" for modification by not giving it "proper review," and by failing to afford him extra time to respond to various unspecified motions. We decline to reach the merits of this claim for lack of a reviewable record.

The plaintiff does not state with clarity what accommodation his disability required the court to provide. He likewise has not provided us with a transcript from which we might determine whether he apprised the court of his disability, and, if so, how the court responded. Because the plaintiff, who, as the appellant, has the burden to provide this court with an adequate record, has failed to do so, we decline to review the merits of the plaintiff's claims. See *Sabanovic* v. *Sabanovic,* 108 Conn. App. 89, 92, 946 A.2d 1288 (2008); see also Practice Book § 61-10.[9]

---

due process right to be with his daughters than the law affords to the defendant, their mother.

[9] We note, however, that the plaintiff has competently filed pro se motions for continuance and extensions of time over the course of this litigation. With respect to an earlier claim concerning his alleged attention deficit disorder, this court stated that "the plaintiff indicated that he should have

The judgment of contempt is vacated. The order modifying visitation is affirmed.

In this opinion the other judges concurred.

been provided with an 'interpreter' at the hearing on his application, i.e., someone familiar with his disability who could have effectively communicated his position to the trial court. In essence, the plaintiff was describing the services of an attorney. The general rule is that court-appointed counsel is not available in civil proceedings. . . . We also note that the plaintiff's argument before this court, although not legally persuasive, was articulate." (Citation omitted.) *Kennedy* v. *Putman*, 97 Conn. App. 815, 816 n.3, 905 A.2d 1280 (2006).