LEONARD PRZEKOPSKI, JR. *v.* ZONING BOARD OF APPEALS OF THE TOWN OF COLCHESTER
(AC 29775)
(AC 29867)

Robinson, Alvord and Schaller, Js.

Argued December 6, 2010—officially released September 6, 2011

*Ronald F. Ochsner*, for the appellant (plaintiff).

*Beth Bryan Critton*, with whom was *David F. Sherwood*, for the appellees (defendants).

*Opinion*

ROBINSON, J. The plaintiff, Leonard Przekopski, Jr., appeals from the judgments of the trial court in connection with a cease and desist order pertaining to certain of his real property. On appeal, the plaintiff claims that the court improperly (1) granted a motion for contempt filed by the defendant zoning board of appeals of the town of Colchester[1] for his alleged violation of a stipulated judgment, (2) found that he had violated a court order and (3) granted a motion for sanctions and attorney's fees filed by the defendant. We agree with the plaintiff only as to his claim that the court improperly granted the motion for sanctions and attorney's fees.

---

[1] According to the record, on December 4, 2006, Colchester Concerned Citizens, Inc. (Concerned Citizens), filed a notice of intervention with the court, pursuant to General Statutes § 22a-19. Concerned Citizens thereafter intervened in the action as a defendant. We refer in this opinion to the zoning board of appeals of the town of Colchester as the defendant.

Accordingly, we reverse in part and affirm in part the judgments of the trial court.

Our review of the record reveals the following relevant facts and procedural history. The plaintiff and his wife, Karen Przekopski, are the owners of a parcel of real property located at 36 Pine Road in Colchester (property). The property is used for a variety of industrial activities, including the excavation and processing of sand and gravel, soil manufacturing, recycling of earth materials[2] and the bulk storage of manure.[3]

On or about May 8, 2006, the zoning enforcement officer for the town of Colchester issued a cease and desist order to the plaintiff directing him to cease and desist "any and all excavation, recycling activities, and bulk storage of manure" on the property until a zoning permit for such activities had been obtained. The cease and desist order stated that these activities were being conducted in violation of the zoning regulations for the town of Colchester (zoning regulations). In response, on June 1, 2006, the plaintiff appealed the issuance of the cease and desist order to the defendant, claiming that he had a right, pursuant to both the zoning regulations and the laws of Connecticut, to conduct these activities on the property. A public hearing was held on the plaintiff's appeal, and the defendant voted to uphold the issuance of the cease and desist order on August 15, 2006.

The plaintiff appealed from that decision to the Superior Court, claiming that the defendant had improperly

---

[2] Recycling of earth materials includes such activities as the disposal of concrete, asphalt and tree stumps.

[3] The plaintiff and his wife also own a second parcel of real property located at 257 Westchester Road in Colchester, which is contiguous to the property at issue in the present appeal. The property on Westchester Road is used for the same industrial activities, and that property is the subject of our decision in *Przekopski* v. *Zoning Board of Appeals*, 131 Conn. App. 200, 26 A.3d 671 (2011).

sustained the cease and desist order. In addition, on November 1, 2006, the plaintiff filed a motion pursuant to General Statutes § 8-8 (h)[4] to stay enforcement of the cease and desist order. On February 20 and 21, 2007, the court conducted a hearing on the motion. On February 21, 2007, before the court could issue a ruling on the motion, the parties entered into a stipulated agreement regarding the property. Pursuant to the stipulation, no later than April 23, 2007, the plaintiff was required to file an application for a special exception from the zoning regulations for the excavation of sand and gravel, and an application for a variance from the zoning regulations for the processing and recycling of earth materials. In the interim, the plaintiff was permitted to continue, but not intensify, his current activities on the property.

On April 25, 2007, the defendant filed a motion for contempt, alleging, inter alia, that the plaintiff had failed to submit the applications by the April 23, 2007 deadline. A hearing was held on May 7, 2007, and the court granted the defendant's contempt motion from the bench, concluding that it was uncontested that the plaintiff had not made the necessary filings. The court thereafter imposed a fine of $1000 per day beginning on May 7, 2007, and continuing until the applications were filed. It suspended the imposition of the fines, however, because it found that the delay in filing was due in part to causes beyond the plaintiff's control. The court then extended the filing deadline for the applications to June 23, 2007, and provided that the fines would be abated if the filings were completed by that date.

On June 22, 2007, the plaintiff and his wife submitted a special exception application (application) to the

___

[4] General Statutes § 8-8 (h) provides in relevant part: "The appeal [from any decision of the zoning board of appeals] . . . shall not stay proceedings on the decision appealed from. However, the court to which the appeal is returnable may grant a restraining order, on application, and after notice to the board and cause shown."

planning and zoning commission of the town of Colchester (commission). The application requested a special exception from the zoning regulations to conduct an excavation operation and to process and recycle earth materials. On August 21, 2007, while the application was pending before the commission, the plaintiff filed a motion for a stipulated judgment, requesting that the court render judgment in favor of the defendant and in accordance with the stipulation. On September 13, 2007, the court granted the motion. On November 28, 2007, the commission denied the application on the ground that it did not meet the standards for a special exception.[5] Thereafter, the plaintiff continued excavation and recycling activities on the property.

On February 27, 2008, the defendant filed a second motion for contempt. The defendant claimed that the stipulation required the plaintiff "to cease any and all unapproved activities [on the property] effective the date of denial of . . . [the] application(s)." The defendant argued that the plaintiff was in violation of the stipulation because of "his failure to cease all unpermitted activities on the . . . property, in accordance with the [s]tipulation and the [j]udgment of [the] [c]ourt." The defendant requested that the court hold the plaintiff in civil contempt and that it further order the plaintiff "to cease immediately all unpermitted excavation, earth materials recycling and processing and other unpermitted activities on the . . . property . . . ."

The court held a hearing on the second contempt motion. After hearing arguments from counsel, the court, ruling from the bench, found "the plaintiff to be in contempt of the agreement, [and] the court's . . .

---

[5] The plaintiff and his wife appealed the commission's decision to the Superior Court. The court, *Purtill, J.*, upheld the decision in a memorandum of decision issued on October 1, 2010.

prior order, for the plaintiff's failure to cease all unpermitted activities on the . . . property . . . in accordance with the stipulate[ed] judgment of this court." Thereafter, by order dated February 27, 2008, the court ordered "the plaintiff, or anyone working on the plaintiff's behalf, [to] cease all nonpermitted excavation [of] earth material[s], recycling and processing and any other nonpermitted activities on the . . . property." The order provided that "[i]f the plaintiff [did] not cease such operations [by March 17, 2008], a fine of $1000 per day [would] be ordered . . . ."[6] By order dated March 19, 2008, the court extended the date by which the plaintiff had to cease the operations proscribed by the February 27, 2008 order to March 26, 2008. It provided that a fine of $1000 per day would be "retroactive beginning March 19, 2008," if such operations did not cease.

On April 8, 2008, the defendant filed a motion for judgment, requesting, inter alia, that the court render judgment in favor of the defendant on the basis of the plaintiff's continuing violations of the court's orders. The court conducted a hearing on the defendant's motion on April 16, 2008. At the hearing, the plaintiff testified that he owned Przekopski Sand, Gravel and Trucking (business) with his wife, that the business conducted sand and gravel excavation operations on the property and that he shared any profits generated by the business with his wife. The plaintiff admitted that he had conducted sand and gravel excavation operations on the property prior to March 26, 2008, but claimed that he had not conducted any such operations

---

[6] According to the record, the court delayed imposition of the fine to allow the plaintiff time to brief his motion for a writ of mandamus, which had been filed on February 27, 2008, and scheduled for a hearing on March 17, 2008. Although this court has not been provided with a copy of the motion, a review of the transcripts discloses that a writ of mandamus was sought to compel the commission to grant the application that the plaintiff and his wife had filed on June 22, 2007.

on the property or used any of the business' equipment for such purposes since that date. According to the plaintiff, his wife had been handling the daily operations of the business since March 26, 2008, because he had voluntarily relinquished complete control of the business to her following the court's March 19, 2008 order.

On April 16, 2008, the court issued an order providing that "[j]udgment shall enter in the amount of $28,000, which represents [twenty-eight] days of violation of the court's order." It further provided that "[t]he fine for violation of the court's order will remain at $1000 per day." This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

First, the plaintiff claims that the court improperly granted the defendant's second motion for contempt. Specifically, he contends that he could not be found in contempt of the stipulation because (1) his activities constitute preexisting, nonconforming uses of the property protected by the laws of Connecticut, (2) his activities constitute uses permitted as of right under the zoning regulations and (3) it did not require him to terminate his then current activities on the property if the commission denied his application. For the reasons set forth herein, we conclude that the trial court properly granted the defendant's second motion for contempt.

A

The plaintiff first claims that he could not be found in contempt of the stipulation because his activities constitute preexisting, nonconforming uses of the property protected by the laws of Connecticut. We conclude that the plaintiff waived his right to claim that his activities constitute preexisting, nonconforming uses by

entering into the stipulation, which the court entered as a stipulated judgment.

"A stipulated judgment has been defined by our Supreme Court as a contract of the parties acknowledged in open court and ordered to be recorded by a court of competent jurisdiction." *Bank of Boston Connecticut* v. *DeGroff*, 31 Conn. App. 253, 255, 624 A.2d 904 (1993). Although a stipulated judgment is in the nature of a contract and does "not arise from a judicial determination of the rights of the parties or the merits of the case"; 46 Am. Jur. 2d 531, Judgments § 186 (2006); see *Connecticut Pharmaceutical Assn., Inc.* v. *Milano*, 191 Conn. 555, 558, 468 A.2d (1983); "such a judgment is as conclusive as if it had been rendered upon controverted facts." (Internal quotation marks omitted.) *Lee* v. *Tufveson*, 6 Conn. App. 301, 303, 505 A.2d 18, cert. denied, 199 Conn. 806, 508 A.2d 31 (1986). "The essence of the judgment is that the parties to the litigation have voluntarily entered into an agreement setting their dispute at rest and that, upon this agreement, the court has entered judgment conforming to the terms of the agreement." *Bank of Boston Connecticut* v. *DeGroff*, supra, 255.

As a consequence, when parties enter into a stipulated judgment, a presumption arises that they "intended to settle all aspects of the controversy, including all issues raised by the papers comprising the record." *Tureck* v. *George*, 44 Conn. App. 154, 161, 687 A.2d 1309, cert. denied, 240 Conn. 914, 691 A.2d 1080 (1997); see also *Gagne* v. *Norton*, 189 Conn. 29, 34, 453 A.2d 1162 (1983). Stated differently, in the absence of language evidencing an intent to preserve specific issues or claims for further litigation, it is presumed that the parties intended for the stipulated judgment to resolve all contested issues and claims raised in the record. See 46 Am. Jur. 2d 527–28, supra, § 183.

The rationale for such a presumption emanates from the understanding that parties generally enter into a stipulated judgment only "after careful negotiation has produced agreement on their precise terms." (Internal quotation marks omitted.) *Albert Mendel & Son, Inc.* v. *Krogh*, 4 Conn. App. 117, 122, 492 A.2d 536 (1985). Thus, as a result of choosing the terms by which to resolve the controversy, "[t]he parties [thereby] *waive* their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation." (Emphasis added; internal quotation marks omitted.) Id.; see also 46 Am. Jur. 2d 527, supra, § 183. "Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties *each give up something they might have won had they proceeded with the litigation*." (Emphasis added; internal quotation marks omitted.) *Albert Mendel & Son, Inc.* v. *Krogh*, supra, 122; see also 46 Am. Jur. 2d 527, supra, § 183.

In the present case, one of the contested issues concerned whether the plaintiff's activities on the property were preexisting, nonconforming uses protected by the laws of Connecticut. Rather than further pursuing his claim that the activities qualified as such uses, the plaintiff entered into the stipulation and elected to have the court render judgment in the underlying action pursuant to the stipulation. After reviewing the stipulation and the stipulated judgment, we conclude that neither one contains any language evidencing that the parties intended to preserve the issue as to whether the activities qualified as preexisting, nonconforming uses. Consequently, by not including such language, we must presume that the parties intended to settle this aspect of their controversy and, furthermore, that the plaintiff waived his right to further pursue any claim that his activities were preexisting, nonconforming uses of the

property. For these reasons, we decline to consider this claim.

### B

The plaintiff next claims that he could not be found in contempt of the stipulation because his activities constitute uses permitted as of right under the zoning regulations. Again, we conclude that the plaintiff waived his right to claim that his activities constitute uses permitted as of right under the zoning regulations by entering into the stipulation, which the court entered as a stipulated judgment.

In the present case, another contested issue concerned whether the plaintiff's activities on the property were uses permitted as of right under the zoning regulations. Rather than further pursuing his claim that the activities were such uses, the plaintiff entered into the stipulation and elected to have the court render judgment in the underlying action pursuant to the stipulation. We have reviewed the language of the stipulation and the stipulated judgment and conclude that neither one contains any language that evidences that the parties intended to preserve the issue as to whether the activities conducted on the property were uses permitted as of right under the zoning regulations. Therefore, we must presume that the parties intended to settle this aspect of their controversy and, furthermore, that the plaintiff waived his right to further claim that the activities qualified as uses permitted as of right under the zoning regulations. For these reasons, we also decline to consider this claim.

### C

The plaintiff finally claims that he could not be found in contempt of the stipulation because it did not require him to terminate his then current activities on the property if the commission denied his application. Because

the plaintiff did not raise this claim in opposition to the defendant's second motion for contempt before the trial court, we decline to consider it on appeal.

"It is well established that an appellate court is under no obligation to consider a claim that is not distinctly raised at the trial level. . . . The requirement that [a] claim be raised distinctly means that it must be so stated as to bring to the attention of the court the *precise* matter on which its decision is being asked. . . . The reason for the rule is obvious: to permit a party to raise a claim on appeal that has not been raised at trial— after it is too late for the trial court . . . to address the claim—would encourage trial by ambuscade, which is unfair to both the trial court and the opposing party." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Remillard* v. *Remillard*, 297 Conn. 345, 351–52, 999 A.2d 713 (2010).

In the present case, a review of the record reveals that the defendant filed the second motion for contempt on February 27, 2008, which was after the plaintiff's application had been denied by the commission and the plaintiff nevertheless continued his then current activities on the property. At the hearing on the motion, the plaintiff filed his response with the court. In his brief and during his argument before the trial court, the plaintiff claimed that he was not in violation of the stipulation for two reasons: "First, the [p]laintiff has in the past claimed and continues to claim that he possess a preexisting, nonconforming use to conduct earth materials recycling on the property. Second, he also makes the claim that the [zoning] [r]egulations provide him a 'by right' use of the property which the [t]own of Colchester, by way of [the defendant], is attempting, without compensation, to extinguish." The claim now being made by the plaintiff, i.e., that the language of the stipulation did not require him to terminate his then current activities on the property if his application was

denied by the commission, was not distinctly raised before the trial court at the time of the contempt proceeding. Accordingly, because the plaintiff did not raise this claim before the trial court, we decline to consider it.

For the foregoing reasons, we conclude that the trial court did not improperly grant the defendant's second motion for contempt.

II

Second, the plaintiff claims that the court improperly determined that he had violated the March 19, 2008 order directing him to cease nonpermitted activities on the property. Specifically, he argues that the court improperly determined that he was in violation of the order because (1) he was unable to comply with it and (2) the relative economic advantages or disadvantages of a landowner cannot support a finding that a court order has been violated.[7] We are not persuaded.

As an initial matter, in order to determine the standard of review applicable to the plaintiff's claims, we must construe the court's order of April 16, 2008. The order provided: "Judgment shall enter in the amount

---

[7] The plaintiff also alleges that the constitutional rights of his wife have been violated by the actions of the defendant and the trial court. We decline to consider any arguments made on behalf of the plaintiff's wife because "[u]nder long-established principles, a party is precluded from asserting the constitutional rights of another." *Bell* v. *Planning & Zoning Commission*, 174 Conn. 493, 499, 391 A.2d 154 (1978). Therefore, the plaintiff lacks standing to seek redress for any constitutional infringements that may have been suffered by his wife. See id.

In addition, the plaintiff contends that the court improperly determined that he was in violation of the order because (1) his activities constituted preexisting, nonconforming uses of the property protected by the laws of Connecticut, and (2) his activities constituted uses permitted as of right under the zoning regulations. Because we already have concluded that the plaintiff waived his right to claim that his activities were either preexisting, nonconforming uses or uses permitted as of right; see part I A and B of this opinion; we decline to consider these claims.

of $28,000, which represents [twenty-eight] days of violation of the court's order." Pursuant to our plenary review over the construction of a trial court's orders and judgments; see *Stechel* v. *Foster*, 125 Conn. App. 441, 447–48, 8 A.3d 545 (2010), cert. denied, 300 Conn. 904, 12 A.3d 572 (2011); we construe the order as a finding of wilful noncompliance with the court's March 19, 2008 order. Cf. *McGuire* v. *McGuire*, 102 Conn. App. 79, 88, 924 A.2d 886 (2007). Because the April 16, 2008 order was, in effect, a judgment of civil contempt; see *In re Daniel C.*, 63 Conn. App. 339, 369, 776 A.2d 487 (2001) ("[c]ivil contempt involves the wilful failure to comply with an applicable court order"); we review the order under the principles of law applicable to civil judgments of contempt.

"[O]ur analysis of a judgment of contempt consists of two levels of inquiry. First, we must resolve the threshold question of whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt. . . . This is a legal inquiry subject to de novo review. . . . Second, if we conclude that the underlying court order was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding." (Citations omitted.) *In re Leah S.*, 284 Conn. 685, 693–94, 935 A.2d 1021 (2007). In the present case, because the plaintiff does not contend that the March 19, 2008 order was not sufficiently clear and unambiguous to support a judgment of contempt, we need to address only whether the trial court abused its discretion in rendering the judgment of contempt.

A

We first consider the plaintiff's argument that the court improperly determined that he was in violation

of the March 19, 2008 order because he was unable to comply with the order. At the outset, we note that the plaintiff does not contest that nonpermitted activities were being performed on the property after March 26, 2008, in violation of the order. He contends instead that the court improperly concluded that *he* violated the order. We disagree.

"Contempt is a disobedience to the rules and orders of a court which has power to punish for such an offense. . . . Nonetheless, [n]oncompliance alone will not support a judgment of contempt. . . . [A] court may not find a person in contempt without considering the circumstances surrounding the violation to determine whether such a violation was wilful. . . . A judgment of civil contempt is improper if the contemnor, *through no fault of his own,* was unable to obey the court's order." (Citations omitted; emphasis added; internal quotation marks omitted.) *Kennedy* v. *Kennedy,* 114 Conn. App. 143, 148, 968 A.2d 1002, cert. denied, 292 Conn. 918, 973 A.2d 1275 (2009).

As stated previously, we review a trial court's finding of contempt under an abuse of discretion standard. See *In re Leah S.,* supra, 284 Conn. 693–94; see also *Gravius* v. *Klein,* 123 Conn. App. 743, 748, 3 A.3d 950 (2010) ("our standard is to determine whether the court abused its discretion in [finding] that the actions or inactions of the [party] were in contempt of a court order" [internal quotation marks omitted]). In determining whether a trial court abused its discretion, "the unquestioned rule is that great weight is due to the action of the trial court and every reasonable presumption should be given in favor of its correctness. . . . In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably conclude as it did. . . . The trial court's discretion imports something more than leeway in decision making and should be exercised in conformity with the spirit of the law and

should not impede or defeat the ends of substantial justice." (Internal quotation marks omitted.) *Edmond* v. *Foisey*, 111 Conn. App. 760, 774–75, 961 A.2d 441 (2008).

In the present case, the plaintiff argues that because his wife allegedly controls the business' operations, the court could not determine that he violated the court order. We disagree. First, the trial court never made a factual finding regarding this allegation. Even if we were to assume, without deciding, however, that the evidence established that the plaintiff's wife controlled the business' operations, we could not conclude that these actions demonstrate that the plaintiff was unable to comply with the court order *through no fault of his own.*

During his testimony, the plaintiff admitted that until March 26, 2008, he retained control over the business' operations. Therefore, the plaintiff presumptively had the authority to direct the business to cease excavation and recycling activities on the property. Instead of undertaking efforts to cease operations, the plaintiff voluntarily decided to relinquish control of such operations to his wife *after* the court issued the March 19, 2008 order. By voluntarily relinquishing control of these operations, the plaintiff knowingly undertook intentional efforts to ensure the business continued to perform nonpermitted activities on the property after March 26, 2008. Consequently, any inability on the part of the plaintiff to cease such activities on the property is not a result of activities beyond his control. Rather, they are the direct result of the plaintiff's efforts to creatively thwart the court's order. As a result, on the basis of the evidence presented, we cannot conclude that the plaintiff was unable to comply with the court's order through no fault of his own. See *Kennedy* v. *Kennedy*, supra, 114 Conn. App. 148.

Furthermore, the court reasonably could have concluded that the plaintiff engaged in nonpermitted activities on the property after March 26, 2008. The plaintiff

admitted during his testimony that he owned the business that performed excavation and recycling activities on the property, that he had performed these activities on behalf of the business for many years prior to March 26, 2008, and that he shared in any profits generated by the business' operations. Although he claimed that he no longer performed such activities after March 26, 2008, the court was not required to accept this testimony as true. See, e.g., *Blum* v. *Blum*, 109 Conn. App. 316, 329, 951 A.2d 587, ("the trial court is the sole arbiter of witness credibility, [and] it has discretion to reject even uncontested evidence" [internal quotation marks omitted]), cert. denied, 289 Conn. 929, 958 A.2d 157 (2008). As it was uncontested that activities were being performed on the property in violation of the March 19, 2008 order, on the basis of the evidence presented, the court reasonably could have concluded that the plaintiff performed nonpermitted activities on his property after March 26, 2008.

B

We next consider the plaintiff's argument that the court improperly determined that he was in violation of the March 19, 2008 order because the relative economic advantages or disadvantages of a landowner cannot support a finding that a court order has been violated.[8] According to the plaintiff, "this type of alleged economic injury does not fall 'within the zone of interest

---

[8] The plaintiff's argument appears to be based on the following statement contained in the memorandum of law filed by the defendant in support of a motion that it filed on April 8, 2008: "In addition, a gravel excavator who took steps to come into compliance with the zoning regulations has complained to the [t]own [of Colchester] about the lack of uniform enforcement. Because [the plaintiff] is operating without any controls whatsoever, he has a competitive advantage over other operators who incur the costs of implementing dust and erosion controls and other measures required by the zoning regulations."

sought to be protected by the statutory provision whose violation forms the legal basis for the complaint.' "[9]

Even if we were to assume, without deciding, that it is improper for a trial court to consider the relative economic advantages or disadvantages of surrounding landowners in determining whether a court order has been violated, the plaintiff has failed to establish that the court in the present case undertook such a consideration. The plaintiff has cited to nothing in the record to support his claim, and after carefully reviewing the record, we are unable to find any indication that the court considered the relative economic situations of surrounding landowners in rendering its decision. As we have recognized: "The correctness of a judgment of a court of general jurisdiction is presumed in the absence of evidence to the contrary. We do not presume error. The burden is on the appellant to prove harmful error." (Internal quotation marks omitted.) *R. Zemper & Associates* v. *Scozzafava*, 28 Conn. App. 557, 563, 611 A.2d 449 (1992). Therefore, without any indication in the record that the trial court undertook such a consideration, it would be mere speculation for us to assume that the court undertook an improper consideration, if in fact such a consideration is improper, in making its determination. Id.

Accordingly, after carefully considering the plaintiff's arguments, we conclude that the trial court did not abuse its discretion in concluding that the plaintiff violated the March 19, 2008 order.

---

[9] We note that in support of his argument, the plaintiff quotes from the decision of our Supreme Court in *Med-Trans of Connecticut, Inc.* v. *Dept. of Public Health & Addiction Services*, 242 Conn. 152, 158, 699 A.2d 142 (1997). That case, however, did not address the argument raised by the plaintiff. It instead dealt with the issue of whether a party lacked *standing* to challenge a decision of the department of public health and addiction services. Id., 153–54.

## III

Finally, the plaintiff claims that the court improperly granted the defendant's motion for sanctions and attorney's fees. Specifically, the plaintiff argues that it was improper for the court to grant the motion because he was not provided with a meaningful opportunity to respond to the allegations set forth therein.[10] We agree.

The following additional facts are relevant to the plaintiff's claim. On February 27, 2008, the plaintiff filed an action seeking a writ of mandamus to compel the commission to grant the application that he and his wife had filed with it on June 22, 2007. On March 19, 2008, the trial court declined to issue a writ of mandamus on the ground that it sought to compel the performance of a duty that was within the discretion of the commission.

On April 16, 2008, the defendant filed a motion for sanctions and attorney's fees, alleging that counsel for the plaintiff, Ronald F. Ochsner, had engaged in numerous violations of the Rules of Professional Conduct during his representation of the plaintiff, including advancing a frivolous mandamus action. The court previously had scheduled a hearing for April 16, 2008, to consider the motion for judgment filed by the defendant on April 8, 2008. During the hearing on the motion for judgment, the court also considered the motion for sanctions and attorney's fees.

---

[10] In his brief to this court, the plaintiff specifically argues that the trial court committed plain error in granting the defendant's motion for sanctions and attorney's fees. The plain error doctrine, however, is a rule of *reversibility* and not a rule of *reviewability*, and it is reserved for claims that were "either not properly preserved or never raised at all in the trial court." (Internal quotation marks omitted.) *Cogswell* v. *American Transit Ins. Co.*, 282 Conn. 505, 522, 923 A.2d 638 (2007). After carefully reviewing the record, we conclude that the plaintiff sufficiently raised his claim before the trial court. Consequently, we need not engage in plain error analysis. See *Narayan* v. *Narayan*, 122 Conn. App. 206, 211 n.10, 3 A.3d 75, cert. granted on other grounds, 298 Conn. 914, 4 A.3d 833 (2010).

The court summarily denied the motion for sanctions and attorney's fees in all respects, except with regard to the allegation relating to the allegedly frivolous mandamus action, which the court considered further. Ochsner informed the court that he had received a copy of the motion at the close of business on April 15, 2008, but that he did not have time to prepare a response to the allegation. He requested that the court provide him with an opportunity to respond to the allegation before the court issued a ruling. The court then permitted Ochsner to make an oral response to the allegation relating to the allegedly frivolous mandamus action but denied his request to have additional time to respond to the allegation in writing. Ruling from the bench, the court granted in part the defendant's motion for sanctions and attorney's fees, finding that the mandamus action "was absolutely frivolous." The court further stated that "the mandamus action was not right. It took the [c]ourt's time, it took defense time. It's fair to grant attorney's fees for that . . . ." On August 30, 2009, the court assessed $5116 in attorney's fees against the plaintiff and $500 in sanctions against Ochsner.

We begin by identifying the legal principles and the standard of review that guide our resolution of the plaintiff's claim. "We have long recognized that, apart from a specific rule of practice authorizing a sanction, the trial court has the inherent power to provide for the imposition of reasonable sanctions, to compel the observance of its rules. . . . Our trial courts have the inherent authority to impose sanctions against an attorney and his client for a course of claimed dilatory, bad faith and harassing litigation conduct, even in the absence of a specific rule or order of the court that is claimed to have been violated." (Internal quotation marks omitted.) *Stein* v. *Horton*, 99 Conn. App. 477, 489, 914 A.2d 606 (2007).

Although the court has such inherent powers, the sanctioned party has certain procedural rights. "As a procedural matter, before imposing any . . . sanctions, the court must afford the sanctioned party or attorney a *proper hearing on the . . . motion for sanctions.* There must be *fair notice and an opportunity for a hearing on the record.* . . . This limitation . . . is particularly appropriate with respect to a claim of bad faith or frivolous pleading by an attorney, which implicates his professional reputation." (Emphasis added; internal quotation marks omitted.) Id. "Like other sanctions, attorney's fees certainly shall not be assessed lightly or without fair notice and an opportunity for a hearing on the record." (Internal quotation marks omitted.) *Fattibene* v. *Kealey*, 18 Conn. App. 344, 353, 558 A.2d 677 (1989).

"Whether to allow counsel fees and in what amount calls for the exercise of judicial discretion." (Internal quotation marks omitted.) *Stein* v. *Horton*, supra, 99 Conn. App. 488. Therefore, we review the trial court's granting of a motion for sanctions and attorney's fees for an abuse of discretion. Id., 489; see *Berzins* v. *Berzins*, 122 Conn. App. 674, 681–83, 998 A.2d 1265 (applying abuse of discretion standard to review of trial court's granting of motion for sanctions and attorney's fees), cert. granted, 299 Conn. 904, 10 A.3d 521 (2010). "Under the abuse of discretion standard of review, [w]e will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . [Thus, our] review of such rulings is limited to the questions of whether the trial court correctly applied the law and reasonably could have reached the conclusion that it did." (Internal quotation marks omitted.) *Berzins* v. *Berzins*, supra, 683.

In the present case, we conclude that the trial court's failure to provide the plaintiff with additional time to

respond to the defendant's motion for sanctions and attorney's fees violated his procedural rights. As the record reveals, Ochsner received a copy of the motion less than twenty-four hours before the court considered it. At the time Ochsner received the motion, he was preparing for a previously scheduled hearing before the court to address two unrelated motions filed by the defendant eight days earlier. Ochsner explained to the court that he did not have adequate time to prepare a response to the motion for sanctions and attorney's fees and requested more time to respond in writing to the allegation concerning the allegedly frivolous mandamus action. Although the court provided the plaintiff with an opportunity to discuss briefly his response on the record before the court, on the facts in the present case, we cannot conclude that this meets the requirements for a proper hearing. Therefore, because the plaintiff was not provided with a meaningful opportunity to respond to the motion for sanctions and attorney's fees, we conclude that the trial court abused its discretion in granting the motion. See *Fattibene* v. *Kealey*, supra, 18 Conn. App. 353 (reversing sanctions of attorney's fees where court failed to provide party with proper hearing on motion for sanctions). Accordingly, we reverse the judgment of the trial court with respect to its granting of the defendant's motion for sanctions and attorney's fees.

The judgment granting the motion for sanctions and attorney's fees is reversed, and the case is remanded with direction to vacate that finding and the fines related thereto. The judgments are affirmed in all other respects.

In this opinion the other judges concurred.