ANDREW MONSAM *v.* MICHAEL DEARINGTON,
STATE'S ATTORNEY
(AC 23747)

Lavery, C. J., and McLachlan and Dupont, Js.

Argued January 7—officially released April 13, 2004

*Francis T. Mandanici,* assistant public defender, for the plaintiff in error.

*Bruce R. Lockwood,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's

attorney, and *Kevin Doyle*, assistant state's attorney, for the defendant in error.

*Opinion*

DUPONT, J. The plaintiff in error, Andrew Monsam, the defendant in an underlying criminal case,[1] by writ of error[2] filed in this court on November 6, 2002, seeks a vacation of the judgment and a vacation of the sentence of contempt imposed by the trial court. Shortly after the writ was filed, the trial court, on November 14, 2002, vacated its finding of contempt, vacated "the sentence entered thereon [previously] on October 16, 2002" and ordered that the plaintiff in error receive jail credit for the period of time served in connection with the contempt judgment.[3]

---

[1] The plaintiff was charged on April 10, 2002, with one count of aggravated sexual assault in the first degree in violation of General Statutes § 53a-70a (a) (1); seven counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1); three counts of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (A), (B) and (C); one count of unlawful restraint in the first degree in violation of General Statutes § 53a-95 (a); one count of robbery in the first degree in violation of General Statutes § 53a-134 (a) (3); one count of larceny in the second degree in violation of General Statutes § 53a-123 (a) (3); one count of threatening in the second degree in violation of General Statutes § 53a-62 (a) (1); and one count of reckless endangerment in the first degree in violation of General Statutes § 53a-63 (a). He pleaded not guilty to those offenses on April 16, 2002.

[2] A writ of error is an independent action commenced by service and return of process, as in a civil case, and is the sole method of review of summary criminal contempt proceedings. *State* v. *Roman*, 25 Conn. App. 734, 736–37, 596 A.2d 930, cert. denied, 220 Conn. 928, 598 A.2d 368 (1991); see also *Ullmann* v. *State*, 230 Conn. 698, 703, 647 A.2d 324 (1994). Regardless of whether the contempt in this case was summary, committed in the presence of the court; General Statutes §§ 51-33 and 51-33a; or nonsummary, not occurring within the presence of the court; Practice Book §§ 1-17 through 1-21; the plaintiff in error was required to use a writ of error to obtain review. See *Kennedy* v. *QVC Network, Inc.*, 43 Conn. App. 851, 852, 686 A.2d 997 (1996).

[3] In a criminal case, the sentence imposed by the court constitutes the judgment of conviction. *State* v. *Waterman*, 264 Conn. 484, 489 n.6, 825 A.2d 63 (2003). As we will discuss, the contempt in this case was criminal. Convictions of criminal contempt are treated as crimes in the ordinary sense. *Bloom* v. *Illinois*, 391 U.S. 194, 201, 88 S. Ct. 1477, 20 L. Ed. 2d 522 (1968).

The issues raised by the writ of error involve the difference between civil and criminal contempt, whether the doctrine of collateral consequences saves the writ of error from being moot and whether the court had jurisdiction to vacate its finding of contempt and to vacate the sentence previously imposed.

The defendant in error is the state's attorney for the judicial district of New Haven, Michael Dearington, who is prosecuting the underlying case. He and the plaintiff[4] agree that the court's finding of contempt should have been reversed because the plaintiff had not refused to comply with a court order. The parties also agree that the finding of contempt and the contempt judgment involved a criminal contempt, that the writ of error is not moot, that the sentence imposed for the contempt had already been executed, and that the court therefore lacked jurisdiction to vacate its own finding of contempt and to sentence thereon. We agree with the conclusions of the parties.

Although both parties seek a reversal of the judgment and a remand to the trial court to vacate the judgment and sentence, they are not in complete agreement as to the reasoning leading to that result. We, therefore, discuss all of the putative issues raised. Furthermore, we are not bound to accept concessions made by the parties. See *State* v. *Harris*, 60 Conn. App. 436, 443, 759 A.2d 1040, cert. denied, 255 Conn. 907, 762 A.2d 911 (2000).

The procedural background and the facts of this case are not in dispute. On July 3, 2002, seeking to gather evidence to further the underlying criminal prosecution, the state filed a motion for nontestimonial evidence that included a sample of the plaintiff's blood. The court granted the motion over the plaintiff's objection on

---

[4] The word "plaintiff" in this opinion refers to the plaintiff in error, Monsam, the defendant in the underlying criminal case.

August 5, 2002. In that objection, the plaintiff cited concerns over the qualifications of the person taking the blood sample and the cleanliness of the jail in which the sample was to be taken. In granting the motion for nontestimonial evidence, the court stated orally, on the record, that the person taking the sample should be a licensed phlebotomist.

On the day that the blood sample was to be taken, the plaintiff refused to submit to the procedure, citing the same concerns over the qualifications of the person taking the sample, sterility of the conditions, and the related dangers of acquiring the hepatitis type C virus and the human immunodeficiency virus. The plaintiff did not resist physically but stated that he would not allow the procedure to take place. Although the person taking the sample was qualified to take blood samples pursuant to General Statutes § 54-102a, she was not a licensed phlebotomist. On September 17, 2002, the court found the plaintiff in contempt for refusing to comply with its order granting the state's motion for nontestimonial evidence but stated that it would defer sentencing until the order was satisfied.

After the plaintiff's concerns over cleanliness and the qualifications of the person performing the procedure were resolved, the plaintiff submitted to having his blood drawn. On October 16, 2002, subsequent to a successful attempt by the state to draw his blood, the court sentenced the plaintiff to four months incarceration for contempt.

Subsequently, the court, sua sponte, vacated the contempt finding in a four line memorandum of decision dated November 14, 2002, and ordered credit granted for any time already served. On April 3, 2003, the court articulated its rationale for the vacation of the finding and the sentence. In its articulation, the court acknowledged that a trial court may not vacate a criminal judg-

ment after the sentence has been imposed or has been executed, citing *State* v. *Luzietti*, 230 Conn. 427, 646 A.2d 85 (1994), but concluded that the case did not govern because this contempt finding was essentially civil in nature, rather than criminal.

We first address the question of whether the writ of error is moot because mootness implicates this court's subject matter jurisdiction and is a threshold matter for resolution. *Ayala* v. *Smith*, 236 Conn. 89, 93, 671 A.2d 345 (1996). In this case, the plaintiff cannot obtain practical relief by a reversal of the judgment of conviction or vacation of the sentence because the plaintiff is no longer imprisoned for the contempt. A determination of whether mootness exists is not only established by the presence or absence of practical present relief, but by the presence or absence of possible future prejudicial consequences as a result of the challenged impropriety of the appeal. *State* v. *McElveen*, 261 Conn. 198, 205, 802 A.2d 74 (2002). The writ of error is not moot in this case because collateral consequences from the judgment of contempt itself may arise in the future.[5]

"It is well established that since collateral legal disabilities are imposed as a matter of law because of a criminal conviction, a case will not be declared moot even where the sentence has been fully served." *Barlow* v. *Lopes*, 201 Conn. 103, 112, 513 A.2d 132 (1986). In the present case, some twenty-eight days of the sentence already had been served when the court vacated the sentence. This case is not moot because the collateral consequences of a criminal conviction are legion, involving possible heavier penalties in the event of future convictions, and might affect a wide range of civil

---

[5] Because we conclude that the contempt here was criminal rather than civil, we discuss collateral consequences in terms of criminal cases. The mootness doctrine itself applies to writs of error, whether based on criminal or civil proceedings. *Tappin* v. *Homecomings Financial Network, Inc.*, 265 Conn. 741, 830 A.2d 711 (2003).

rights. Id., 112–13; see also *Shays* v. *Local Grievance Committee*, 197 Conn. 566, 570–74, 499 A.2d 1158 (1985).[6]

We next consider whether the court had subject matter jurisdiction to vacate its contempt finding, judgment of contempt and sentence, all of which followed the imposition of sentence.[7] That question rests on whether the contempt finding was criminal in nature or, as the trial court found, civil in nature.[8] The parties agree that this was a criminal contempt conviction. We agree with the parties.

The distinction between civil and criminal contempt focuses on the intent of the punishment and the nature and character of the punishment. *International Union, United Mine Workers of America* v. *Bagwell*, 512 U.S. 821, 827–29, 114 S. Ct. 2552, 129 L. Ed. 2d 642 (1994); *McTigue* v. *New London Education Assn.*, 164 Conn. 348, 352, 321 A.2d 462 (1973). Contempt is civil if the intent of the punishment is coercive and the punishment is avoidable. If the effect of the punishment is such that a contemnor can avoid or reduce imprisonment, fine or any other punishment imposed, the contempt is civil in nature. *International Union, United Mine Workers of America* v. *Bagwell*, supra, 827. Civil contempt is designed to compel future compliance. After a finding

---

[6] But see footnote 7 for the contrast in the context of habeas corpus petitions.

[7] The lack of subject matter jurisdiction in the context of some habeas corpus petitions is not applicable in cases such as the present one. The essence of a habeas corpus petition is relief from unlawful custody. If a petitioner suffers no present restraint because he has fully served his sentence, there is no subject matter jurisdiction to entertain a petition for habeas corpus. *Ford* v. *Commissioner of Correction*, 59 Conn. App. 823, 827–28, 758 A.2d 853 (2000).

[8] The court's characterization of the contempt as civil is subject to a de novo review on appeal. See *International Union, United Mine Workers of America* v. *Bagwell*, 512 U.S. 821, 114 S. Ct. 2552, 129 L. Ed. 2d 642 (1994); *Ullmann* v. *State*, 230 Conn. 698, 709, 647 A.2d 324 (1994).

of civil contempt, the court retains jurisdiction to vacate the finding or to give the contemnor the opportunity to purge the contempt by later compliance with a court order. See *Ullmann* v. *State*, 230 Conn. 698, 710, 647 A.2d 324 (1994).

Criminal contempt, in contrast to civil contempt, is punitive in nature. If the contemnor cannot avoid or has no opportunity to purge the defiance, the act of defiance is criminal. Id. A finding of criminal contempt is usually levied for completed acts of disobedience to vindicate the authority of the court itself. *International Union, United Mine Workers of America* v. *Bagwell*, supra, 512 U.S. 828; see also *Ullmann* v. *State*, supra, 230 Conn. 709 n.9, 710; *McTigue* v. *New London Education Assn.*, supra, 164 Conn. 353–55.

In this case, the court made a finding of contempt on September 17, 2002, but between that date and October 16, 2002, the date the plaintiff was sentenced to four months imprisonment, the court found that the plaintiff had complied with the order that was the subject of the contempt finding. The court stated that although it "appreciated the fact that [the plaintiff] didn't cause any physical difficulties with the marshals," "[the plaintiff] still disregarded the court's order. Now, these orders have to have some kind of teeth, otherwise they are entirely ineffective and they result in the kind of delays we've had here and just a wasting of time and obstruction of justice, so there has to be some teeth to a defiance of this nature." The court's words reflect the punitive nature of the sentence and its intent to vindicate the authority of the court.

The definite period of the sentence, which was imposed after the blood sample already had been drawn, without a condition by which the plaintiff might comply with the court's order and reduce the sentence or purge the allegedly contemptuous act, leads to the

conclusion that the contempt was criminal. Having determined that this is a criminal contempt proceeding, we next determine whether the court had jurisdiction to vacate its prior judgment of contempt and its prior sentence of four months incarceration.

Here, the defendant was sentenced on October 16, 2002, and his custody committed to the commissioner of correction to serve the four month sentence that was imposed. Nearly one month later, on November 14, 2002, the court vacated that sentence. We conclude that it had no jurisdiction to do so. The jurisdiction of a sentencing court ends when the sentence is put into effect; *State* v. *Pagan*, 75 Conn. App. 423, 429, 816 A.2d 635, cert. denied, 265 Conn. 901, 829 A.2d 420 (2003); except where the legislature has granted continuing jurisdiction after the commencement of a sentence. See, e.g., General Statutes §§ 52-270, 53a-29 through 53a-34; see also General Statutes § 53a-39 (allowing *modification* of sentence after hearing and for good cause);[9] *State* v. *Waterman*, 264 Conn. 484, 489 n.6, 825 A.2d 63 (2003) (imposition of sentence constitutes final judg-

---

[9] Other statutes, rules of practice or cases allowing continuing jurisdiction after a judgment or final order do not apply to the vacation of sentences where the defendant has begun the imprisonment. General Statutes § 53a-39 grants jurisdiction to the trial court to modify or to reduce a sentence of less than three years, but the statute does not grant jurisdiction to the trial court to vacate the underlying judgment of conviction and sentence. *State* v. *Luzietti*, supra, 230 Conn. 433. Civil and criminal rulings, however, during the course of a trial, such as rulings on motions to suppress, may be set aside or opened within four months of the particular judgment pursuant to Practice Book § 17-4; *State* v. *Wilson*, 199 Conn. 417, 437, 513 A.2d 620 (1986); but Practice Book § 17-4 does not apply to the vacation of a conviction after a defendant has begun serving a sentence pursuant to the conviction. See *State* v. *Luzietti*, supra, 433.

In *State* v. *Waterman*, 264 Conn. 484, 489, 825 A.2d 63 (2003), the Supreme Court upheld the trial court's jurisdiction to make a postconviction factual finding that allowed the court, after the defendant had begun serving his sentence, to advise the defendant of his mandatory registration requirements as a sex offender. *Waterman* leaves the majority decision in *Luzietti* intact because *Waterman* does not disturb the sentence itself.

ment in criminal case). Neither party cites any statute, rule of practice or case granting the court continuing jurisdiction to vacate the plaintiff's sentence. We also do not know of any. Therefore, the precepts of *Luzietti* and *Waterman* cause us to hold that the court had no jurisdiction to do so in this case.

The parties agree, as do we, that the plaintiff should not have been held in contempt for refusing to follow the court's order to submit to a blood test by a licensed phlebotomist. The precise reason for his refusal was that the person who was sent to draw his blood was not a licensed phlebotomist. He had not, therefore, refused to follow the court's order. His conduct was not legally susceptible of constituting a contempt. That conclusion, however, did not confer jurisdiction on the court to vacate the sentence it already had imposed and that the defendant already had begun to serve.[10]

The writ of error is granted; the conviction and sentence thereon are vacated, and it is ordered that the plaintiff be given credit for time he served from October 16 to November 14, 2002.[11]

In this opinion the other judges concurred.

---

[10] The parties make no claim that the sentence imposed was illegal or that there was an illegal disposition that could be corrected pursuant to Practice Book § 43-22. Both the trial court and this court have the power at any time to correct an illegal sentence. Excluding any illegal sentence or disposition, the trial court had no jurisdiction to alter its sentence by vacating it. See *State* v. *Cator*, 256 Conn. 785, 803–805, 781 A.2d 285 (2001).

[11] The underlying criminal charges against the plaintiff have not yet been resolved. In the event he eventually receives a prison sentence, he will be entitled to the credit.