ERIC S. *v.* TIFFANY S.*

TIFFANY S. *v.* ERIC S.
(AC 33251)

Lavine, Alvord and Harper, Js.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued January 22—officially released May 28, 2013

*Steven R. Dembo*, with whom was *P. Jo Anne Burgh*, for the cross appellant (defendant in the first case, plaintiff in the second case).

*Opinion*

ALVORD, J. The plaintiff, Eric S., commenced this action on May 14, 2009, against the defendant, Tiffany S.,[1] seeking a dissolution of the parties' marriage.[2] That same day, in a separate action, the defendant filed an application for relief from abuse against the plaintiff pursuant to General Statutes § 46b-15.[3] The two actions became companion cases by order of the court issued on January 19, 2010.

Following a hearing, the court granted the defendant's application for a domestic restraining order on June 16, 2009. The restraining order was extended several times, as requested in subsequent motions filed by the defendant. On February 14, 2011, the defendant filed a motion for contempt against the plaintiff, claiming that he had violated the restraining order. The court heard testimony, found the plaintiff in contempt and ordered him to pay the defendant $7500 in attorney's fees. The plaintiff appealed from the court's finding of contempt, and the defendant filed a cross appeal. This

---

[1] Although Eric S. is the plaintiff in the dissolution action and Tiffany S. is the plaintiff in the action for a restraining order against Eric S., we refer to Eric S. as the plaintiff and Tiffany S. as the defendant throughout this opinion for the sake of convenience.

[2] A judgment of dissolution was rendered on September 6, 2011.

[3] General Statutes § 46b-15 (a) provides: "Any family or household member, as defined in section 46b-38a, who has been subjected to a continuous threat of present physical pain or physical injury, stalking or a pattern of threatening, including, but not limited to, a pattern of threatening, as described in section 53a-62, by another family or household member may make an application to the Superior Court for relief under this section."

court dismissed the plaintiff's appeal on October 18, 2011.[4] On cross appeal, the defendant claims that the court improperly (1) characterized the plaintiff's violation of the restraining order as a civil contempt and (2) limited the choice of sanctions to those available upon a finding of civil contempt. We affirm the judgment of the trial court.

The following additional facts and procedural history are necessary for the resolution of the defendant's claims. The parties were married on August 23, 2003, and have one minor child. The domestic restraining order, granted after the hearing on June 16, 2009, ordered the plaintiff, inter alia, to refrain from threatening, harassing or stalking the defendant or their minor child, to refrain from having contact in any manner with the defendant or their minor child and to refrain from coming within 100 yards of the defendant or their minor child.[5] Additionally, the order contained firearms restrictions that prohibited the plaintiff from possessing any pistol, revolver or any other firearm. The order also contained the following language: "[A]*ny violation of this order constitutes a criminal violation of a restraining order* which is punishable by a term of imprisonment of not more than five years, a fine of not more than five thousand dollars or both. . . . If you possess any pistol or revolver, or any firearm or electronic defense weapon, after you have had notice of such order and an opportunity to be heard, *you will be guilty of criminal possession* of a pistol or revolver or criminal possession of a firearm or electronic defense weapon . . . punishable by a fine of up to five thousand dollars or imprisonment of up to five years or both . . . ." (Emphasis added.)

---

[4] The plaintiff's appeal was dismissed for his failure to file an appellate brief.

[5] The restraining order did provide that the plaintiff was allowed to have supervised visitation with the parties' minor child at times set forth in that order.

A few days after the issuance of the domestic restraining order, a pawn shop employee contacted the Wethersfield police department and reported that the plaintiff offered him $10,000 to purchase a gun. The plaintiff was arrested and subsequently entered a plea of guilty to reckless endangerment in the first degree in criminal court. At about the same time as the pawn shop incident, the plaintiff went to their minor child's school in West Hartford and again was arrested for criminal violation of the restraining order. Because of these criminal incidents and arrests, the plaintiff was incarcerated for a short period of time.

The initial domestic restraining order would have expired on December 16, 2009, but the defendant filed subsequent motions to extend it for successive six month periods. On February 11, 2011, after the third requested extension had been granted by the court, the defendant filed a motion for contempt alleging that the plaintiff had violated the domestic restraining order. The motion for contempt related the incidents at the pawn shop and the child's school and, additionally, set forth various incidents in which the plaintiff's behavior was alleged to be threatening to the health, safety and well-being of the defendant and their minor child. The defendant claimed that the plaintiff continued in his attempts to initiate contact with her and requested that the court "punish him accordingly." As sanctions, the defendant requested "an order of incarceration, referral to the criminal authorities, imposition of attorney's fees and costs and such other and further orders as are necessary to protect the defendant's safety."

At the contempt hearing held on February 16 and March 2, 2011, the defendant's counsel told the court that it had a "plethora of [available] remedies" if it found the plaintiff in contempt of the domestic restraining order.[6] Stressing the seriousness of the

---

[6] The plaintiff represented himself at the contempt hearing.

plaintiff's behavior, the defendant's counsel, at various times during the hearing, suggested that the court could: (1) impose house arrest; (2) have the plaintiff monitored with an electronic ankle bracelet; (3) refer the matter to the office of the state's attorney for criminal prosecution; (4) incarcerate the plaintiff; and (5) order the plaintiff to pay the attorney's fees of the defendant. The defendant's counsel argued that all of these sanctions could be imposed because § 46b-15 (g) provides that a court "may impose such sanctions as the court deems appropriate" if it finds a party has violated a domestic restraining order.

The court responded that a party's violation of a domestic restraining order could lead to both criminal prosecution and civil contempt, but the court questioned its authority to impose incarceration as a punishment in a civil contempt proceeding. The defendant's counsel stated: "[I]f you can do it for nonpayment of child support, incarceration, it would be a mockery of the restraining order, which is there for the protection of people, that you cannot do it in a case of this nature." The court inquired: "Well, but the reason you can do it in child support is to allow the person to purge themselves of that. How—if you do it in a scenario like this, how does that individual purge himself of the contempt?" The defendant's counsel responded: "I'll have to think about that."

The court found the plaintiff in contempt on February 16, 2011, but continued the hearing to March 2, 2011 to determine the appropriate sanctions for the plaintiff's violation of the restraining order. On March 2, 2011, the defendant's counsel submitted to the court a "Memorandum of Law Re: Contempt Remedies." In the memorandum's concluding paragraph, the defendant requested that the court: (1) refer the matter to the family violence unit; (2) order the court support services division to make arrangements for the electronic

monitoring of the plaintiff; (3) order the plaintiff to pay the attorney's fees of the defendant; and (4) refer the court's finding of contempt and its entire decision to the appropriate prosecutorial authorities and the plaintiff's probation officer.[7] The remedies requested by the defendant were discussed on the record.

The court concluded as follows: "I'm going to produce this transcript. I'm not going to order his incarceration because, frankly, I don't think he holds the key to purging himself from whatever I incarcerate him for, and that's what [is] required in a civil contempt. So, he [is] not going to be incarcerated today.

"I am going to produce the transcript. I'm going to send it over to the probation officer.

"I'm going to indicate that it's the court's belief that a much more intensive domestic violence program is appropriate, that the family violence education program is not going to be adequate for this situation. And I will certainly indicate that it's been suggested that electronic monitoring might be more appropriate. And I'm going to leave it at that. . . . Oh, and I'm going to consider the affidavit on the attorney's fees and I will make an order on that."[8]

In her cross appeal, the defendant now challenges the adequacy of the sanctions imposed by the court for the plaintiff's violation of the domestic restraining order. Essentially, she claims that the court improperly treated his contempt as a civil contempt and improperly limited the sanctions to civil contempt remedies.

---

[7] The defendant did not request incarceration or a suspended sentence of imprisonment in that memorandum of law.

[8] The court noted that it already had made a referral to the office of the state's attorney and had sent the transcript from the February 16, 2011 court proceeding.

## I

The defendant's first claim is that a violation of a § 46b-15 domestic restraining order should not be characterized as a "purely civil contempt." She argues that because the contemptuous behavior in this case subjected the plaintiff to criminal prosecution, the contempt proceedings should be considered quasi-criminal in nature.[9] The defendant cites cases from other jurisdictions in support of this position because there is no case law in Connecticut holding that a § 46b-15 contempt hearing is a quasi-criminal proceeding.

The court expressly stated that it considered the plaintiff's violation of the domestic restraining order to be a civil contempt. A court's characterization of a contempt as civil is subject to a de novo review on appeal. *Monsam* v. *Dearington*, 82 Conn. App. 451, 456 n.8, 844 A.2d 927 (2004). "Our case law classifies civil contempt as conduct directed against the rights of the opposing party . . . while criminal contempt consists of conduct that is directed against the dignity and authority of the court." (Internal quotation marks omitted.) *In re Jeffrey C.*, 261 Conn. 189, 197, 802 A.2d

[9] The defendant argues: "[The plaintiff's] actions would support a conviction for any of several violations of the Connecticut Penal Code, including stalking in the first or second degree and harassment in the first degree. Stalking in the first degree is a class D felony, and it can be established by proof of conduct constituting stalking in the second degree plus a preexisting court order prohibiting the subject conduct. A criminal defendant who is convicted of stalking in the first degree can be incarcerated. . . . It would, therefore, be a curious result if precisely the same conduct were deemed to be secure from incarceration solely because the complainant alleged violation of a restraining order under § 46b-15 instead of violation of [General Statutes] § 53a-181c." (Citation omitted.)

We are not persuaded by this argument. In a criminal proceeding for stalking in the first degree, the accused would have the right to a trial by jury, and the charges would have to be proved beyond a reasonable doubt. The defendant asks the civil court to find a party charged with the violation of a domestic restraining order guilty of a criminal offense and to incarcerate him without the due process protections afforded an accused in a criminal proceeding.

772 (2002). In the present case, the plaintiff violated a restraining order designed to protect the defendant and the parties' minor child. His behavior was directed at those individual parties. Our case law has never treated contempt, under such circumstances, to be criminal or quasi-criminal in nature. To the contrary, our Supreme Court recently made a distinction between a criminal protective order issued in connection with a pending criminal case and a civil domestic violence restraining order issued pursuant to § 46b-15. See *State* v. *Fernando A.*, 294 Conn. 1, 9–13, 25 n.19, 981 A.2d 427 (2009). The family court's finding of a civil contempt in this action is not transformed into a criminal contempt simply because the plaintiff's behavior in this case subjected him to both a criminal prosecution and a civil proceeding in the family court for violation of a § 46b-15 domestic restraining order.[10]

Because we conclude that the trial court properly determined that the plaintiff's violation of the restraining order was a civil contempt, the sanctions that may be imposed are limited to civil contempt remedies. "The distinction between civil and criminal contempt focuses on the intent of the punishment and the nature and character of the punishment. . . . Contempt is civil if the intent of the punishment is coercive and the punishment is avoidable. If the effect of the punishment is such that a contemnor can avoid or reduce imprisonment, fine or any other punishment imposed, the contempt is civil in nature. . . . Civil contempt is designed to compel future compliance. After a finding of civil contempt, the court retains jurisdiction to vacate the finding or to give the contemnor the opportunity to purge the contempt by later compliance with a court order. . . .

---

[10] General Statutes § 46b-1 provides in relevant part: "Matters within the jurisdiction of the Superior Court deemed to be family relations matters shall be matters affecting or involving . . . (5) actions brought under section 46b-15 . . . ."

"Criminal contempt, in contrast to civil contempt, is punitive in nature. If the contemnor cannot avoid or has no opportunity to purge the defiance, the act of defiance is criminal. . . . A finding of criminal contempt is usually levied for completed acts of disobedience to vindicate the authority of the court itself." (Citations omitted.) *Monsam* v. *Dearington*, supra, 82 Conn. App. 456–57.

Here, although the defendant frames her issue as the court's improper refusal to impose sanctions other than those available in civil contempt proceedings, she has focused solely on the punishment of incarceration in her appellate brief and at the time of argument before this court. We, therefore, address only her claim that the court should have considered and imposed the punishment of incarceration for the plaintiff's violation of the domestic restraining order.

We agree with the general premise that incarceration may be imposed in a civil contempt proceeding under certain circumstances. "In Connecticut, the court has the authority in civil contempt to impose on the contemnor either incarceration or a fine or both." (Internal quotation marks omitted.) *Woodbury Knoll, LLC* v. *Shipman & Goodwin, LLP*, 305 Conn. 750, 766 n.12, 48 A.3d 16 (2012); *Martocchio* v. *Savoir*, 130 Conn. App. 626, 631, 23 A.3d 1282, cert. denied, 303 Conn. 901, 31 A.3d 1178 (2011). Nevertheless, as recognized by the trial court in this case, the plaintiff contemnor still must have the opportunity to purge himself because it is a civil contempt. "[A] trial court has the power even to incarcerate contemnors in civil contempt cases until they purge themselves . . . ." (Internal quotation marks omitted.) *Martocchio* v. *Savoir*, supra, 631. The defendant wanted the plaintiff incarcerated for his previous violations of the domestic restraining order because she claimed that his behavior was criminal in nature and that she was afraid of him. If the court had

imposed a period of incarceration, there is nothing that the plaintiff could have done to secure his release or to reduce the length of whatever sentence was imposed. In other words, it would not have been coercive, it would have been a purely punitive sanction for a previous domestic restraining order violation. There would have been no opportunity for the plaintiff to purge himself of the civil contempt.

## II

The defendant claims that incarceration is a permitted sanction in a civil contempt proceeding arising out of an alleged violation of § 46b-15 by virtue of the language in the statute itself. The defendant argues: "As evidenced by both the plain language of the statute and the legislative history, the court's authority as to a § 46b-15 (g) contempt is significantly broader than for common-law civil contempt." She directs us to the language in subsection (g) that provides that "the court may impose such sanctions as the court deems appropriate" if it finds a party in contempt of a § 46b-15 restraining order. Such sanctions would include, she claims, incarceration as punishment for a past violation. We disagree.

"Issues of statutory construction raise questions of law, over which we exercise plenary review. . . . The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply." (Internal quotation marks omitted.) *Felician Sisters of St. Francis of Connecticut, Inc.* v. *Historic District Commission*, 284 Conn. 838, 847, 937 A.2d 39 (2008).

"When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the

statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) *Alvord Investment, LLC* v. *Zoning Board of Appeals*, 282 Conn. 393, 401–402, 920 A.2d 1000 (2007). "The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Alexson* v. *Foss*, 276 Conn. 599, 605, 887 A.2d 872 (2006).

The defendant claims that the broad language is clear and unambiguous and permits, virtually, any sanction that a court might find to be appropriate under the circumstances. We conclude that the language is ambiguous because we cannot discern the scope of the remedies that the legislature had in mind from the statutory language alone. We, therefore, look to the legislative history.

Subsection (g) was added to § 46b-15 by No. 86-337, § 7, of the 1986 Public Acts (P.A. 86-337). That amendment was part of a comprehensive bill that included the enactment of General Statutes § 46b-38a et seq. As explained in *State* v. *Fernando A.*, supra, 294 Conn. 18, "[t]hat statute [§ 46b-38c] was enacted in 1986 in response to the domestic abuse of Tracey Thurman, a woman whose local police department had failed to aid her after repeated beatings by her former husband. . . . The legislature created family violence response and intervention units to accept referrals of family violence cases from judges or prosecutors, and prepare family

services reports and recommendations for the court based on interviews of the complainant and the defendant." (Citation omitted.) In P.A. 86-337, various statutory provisions relating to domestic abuse were either enacted or amended to address existing problems in processing such matters by the court system. Some of the provisions of P.A. 86-337 addressed criminal protective orders and some of the provisions addressed civil proceedings for domestic abuse. The extensive legislative history addresses all aspects of the proposed legislation and must be read carefully, not only to ascertain whether a remark is directed to a civil or criminal provision, but also to determine whether the referenced provision was part of the legislation as enacted.

Section 46b-15 was not substantially changed, but a new subsection (g) was added to address the types of sanctions that a court could impose for the violation of a civil domestic abuse restraining order. Subsection (g) is essentially the same today as it was when it was enacted in 1986. The legislation as passed, and as it exists today, always has authorized the court to "impose such sanctions as the court deems appropriate." General Statutes § 46b-15 (g). There are, however, other significant differences in the legislation as originally proposed and as passed. The proposed House Bill No. 5255, "An Act Concerning Family Violence Prevention and Response," as discussed by the legislators and members of the public in 1986, initially contained the following language, which was either deleted or amended.

The proposed bill stated that a restraining order issued pursuant to § 46b-15 would contain the language: "Any violation of this order constitutes criminal offense of a restraining order." See Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1986 Sess., p. 587. That proposed language was deleted from the bill that passed. Further, the proposed bill provided that "[a]

person is guilty of criminal violation of a restraining order when he violates a restraining order which has been issued against him under Section 46b-15, and which is in effect. Criminal violation of a restraining order is a class A misdemeanor." See id., p. 588. That proposed language also was deleted from the final bill. Significantly, subsection (g) of § 46b-15 initially contained the following provision: "If the court finds the respondent in contempt for violation of an order, the court may impose a fine or a term of imprisonment of not more than thirty days or both, order restitution, require the respondent to post a bond which shall be forfeited to the applicant upon a subsequent finding of further contempt of the order, or which if not forfeited shall be returned upon expiration of the restraining order, or any other remedy it deems appropriate." See id., pp. 588–89. The proposed language, identifying specific sanctions, was deleted from the bill prior to passage. Instead, the legislation that passed provided: "If the court finds the respondent in contempt for violation of an order, the court may impose such sanctions as the court deems appropriate." Public Acts 1986, No. 86-337, § 7.

Accordingly, the defendant is incorrect when she claims that the legislative history reflects that the legislature broadened the available remedies by adding "such sanctions as the court deems appropriate" to the final bill. The proposed bill already contained that language, although it used the word remedy instead of sanctions. Prior to passage, the legislature deleted all of the enumerated criminal type of penalties. Further, in her brief, the defendant states that the legislative history explicitly provided for a fine, posting of a bond and the possibility of a jail sentence. Again, those remarks, while found in the legislative history, addressed proposed language that was deleted from the legislation that became law.

For these reasons, the defendant's argument that the statutory language and legislative history support her claim that the punishment of incarceration was available to the court under the circumstances of this case is not persuasive.[11] Although incarceration still may be a sanction in a civil contempt proceeding if it is coercive in nature and allows a contemnor to avoid or lessen the sentence of incarceration by purging himself of the contempt, that was not the situation in the present case. The court's determination that incarceration was not an appropriate sanction for the plaintiff's violation of the restraining order was not improper.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[11] In her brief and at the time of oral argument before this court, the defendant argued that the court could have imposed a suspended sentence of incarceration for a definite, reasonable time. She claims that such a sanction would then be within the scope of proper remedies for a civil contempt because a suspended sentence, to be imposed if the plaintiff violated the restraining order in the future, would be remedial and coercive.

First, the defendant never raised that argument before the trial court. Second, the restraining order, as acknowledged by the defendant, has expired. This claim, therefore, is moot because the defendant is seeking to have the case remanded to the trial court for it to impose a suspended sentence that would only last for the duration of the restraining order. See *Harris* v. *Harris*, 291 Conn. 350, 355, 968 A.2d 413 (2009) ("it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow" [internal quotation marks omitted]).