EAST HAVEN BUILDERS SUPPLY, INC. *v.* DAVID S. FANTON ET AL.
(AC 23212)

Bishop, West and McLachlan, Js.

Argued September 16, 2003—officially released January 6, 2004

*Ralph C. Crozier*, for the appellant-appellee (named defendant).

*David C. Grimes*, with whom, on the brief, was *Bruce L. Elstein*, for the appellee-appellant (plaintiff).

*Opinion*

McLACHLAN, J. The defendant David S. Fanton appeals and the plaintiff, East Haven Builders Supply, Inc., cross appeals, from the judgment of the trial court. David Fanton claims that the court lacked authority to vacate the judgment against him. On cross appeal, the plaintiff claims that, pursuant to Practice Book § 13-23, the defendant Maureen Fanton's failure to deny specifically the matters in its request for admissions required the court to treat her responses as binding admissions. We affirm in part and reverse in part the judgment of the trial court.

These appeals originate in an ordinary commercial transaction between supplier and purchaser. On August 18, 1999, the defendants entered into a credit application agreement with the plaintiff, enabling them to purchase goods and materials on an open account. Following David Fanton's subsequent purchases under

the account, the balance due to the plaintiff as of January 1, 2000, was $38,705.40.

On June 8, 2000, after the defendants' refusal to pay the balance, the plaintiff instituted an action predicated on an express promise to pay a definite sum. On January 12, 2001, the court granted the plaintiff's motion for default. The defendants filed their answer, special defense and counterclaim on January 17, 2001. The plaintiff served on the defendants a request for admissions dated January 19, 2001. On January 22, 2001, pursuant to General Statutes § 52-192a and Practice Book § 17-14, the plaintiff filed an offer of judgment to settle the matter with "the defendant, David Fanton and Maureen Fanton," for $45,000.

On January 25, 2001, a bevy of documents critical to the resolution of these appeals were filed. First, the defendants filed their responses to the plaintiff's request for admissions. For roughly half of the eleven specified queries, the response was "admit as to David Fanton only." David Fanton signed that response. The accompanying notice of filing stated in relevant part that "[t]he defendants . . . have on this date filed their responses" and was signed by their attorney on behalf of "[t]he defendants." Second, an acceptance of the plaintiff's offer of judgment was filed. That acceptance stated in relevant part that "the defendant, David Fanton, through his attorney, accepts the plaintiff's Offer of Judgment in the amount of Forty-Five Thousand Dollars ($45,000.00), settling any and all claims underlying this action and to stipulate to judgment in said amount . . . ." His attorney signed that document on behalf of "[t]he defendants." Finally, Maureen Fanton filed a disclosure of special defenses.

On March 2, 2001, the court, *Holzberg, J.*, ordered "[j]udgment to enter in accordance with the foregoing." That order was handwritten on the face of the defen-

dants' acceptance, which was marked 'filed' on January 25, 2001. The plaintiff filed successive certificates of closed pleadings on May 9, July 10 and September 6, 2001. On October 25, 2001, the court, *Pittman, J.*, granted Maureen Fanton's motion to both set aside the default of January 12, 2001, and to strike the case from the hearing in damages list. The matter was dismissed by the court on May 3, 2002; on May 30, 2002, the court, *Holzberg, J.*, vacated that dismissal order, thereby restoring the case to the docket. On June 12, 2002, a trial was conducted before the court, *Scheinblum, J.*, which vacated the March 2, 2001 order and ruled in the plaintiff's favor as to David Fanton only, awarding $66,755.13 plus costs. These appeals ensued.

I

On appeal, David Fanton claims that the court lacked authority to vacate the order of judgment against him. We agree. As this issue presents a question of law, our review is plenary. See *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 77 Conn. App. 690, 720, 825 A.2d 153, cert. granted on other grounds, 266 Conn. 906, 907, 832 A.2d 71, 72 (2003).

The record reveals that on January 25, 2001, an acceptance of the plaintiff's offer of judgment was filed. The acceptance stated in relevant part that "the defendant, David Fanton, through his attorney, accepts the plaintiff's Offer of Judgment . . . ." On March 2, 2001, the court, *Holzberg, J.*, ordered "[j]udgment to enter in accordance with the foregoing." As of that date, therefore, the plaintiff had a final judgment against David Fanton. At no time between that date and the trial of June 12, 2002, did either party contest the validity of that judgment.

When the matter returned to court on June 12, 2002, the court addressed the issue of whether the proceeding pertained to both Fantons or to Maureen Fanton only.

Noting that judgment had been ordered pursuant to the offer of judgment, the court inquired:

"The Court: So, was Judge Holzberg's order of judgment vacated, ever?

"[The Defendant's Counsel]: No, Your Honor.

"[The Plaintiff's Counsel]: No.

"The Court: So, there's an outstanding judgment in this file, and you're asking me now to—to make another judgment.

"[The Defendant's Counsel]: Correct, Your Honor.

"[The Plaintiff's Counsel]: We have a judgment against David Fanton. We don't have a judgment against Maureen Fanton. . . .

"The Court: Well, you see, these are all things, I mean, this isn't part of this trial. And this is something that I think if I were counsel, I would've gone to Judge Holzberg and I would've asked for a clarification, an articulation, I would've made a motion to reargue, I would've heard it on the short calendar. I don't think this is the proper forum now to come in and tell me that the judgment entered by Judge Holzberg in March is invalid. I just don't think this is the proper forum to do that in.

"[The Defendant's Counsel]: Your Honor, that was March of 2001. It's beyond the . . . four month period of time to reopen.

"[The Plaintiff's Counsel]: I—I'm not looking to reopen. I'll accept my judgment against David Fanton.

"The Court: All right. Then—

"[The Plaintiff's Counsel]: But—that point—

"The Court: But now you want a judgment against Maureen.

"[The Plaintiff's Counsel]: Absolutely.

"The Court: And you're trying to tell me now that when he offered the acceptance in the name of David only, you agree you're bound by that, but now you're telling me you're still entitled to get a judgment against Maureen.

"[The Plaintiff's Counsel]: Absolutely, Your Honor, because they—what they did was, they agreed for one but not the other. I'll take that; I accepted it. But I didn't accept it as—as—as to closing Maureen's . . . . I don't know that you can't willy-nilly change the terms of an acceptance. So, either I have a judgment only against David, or I have a judgment against neither.

"The Court: Well, you have a judgment. You have a judgment ordered by Judge Holzberg, who is the presiding judge, civil, March, 2001, and that judgment was entered pursuant to an offer of judgment. The offer was made as to both defendants. The defendants, represented by the same counsel, accepted the offer of judgment, but only as to David. You come here now saying they had no right to vary your offer. I say to you, once Judge Holzberg entered the order of judgment as to David, you're barred, you're legally estopped."

From that colloquy, two understandings emerge: First, both parties treated the court's order of March 2, 2001, as binding as to David Fanton and neither thereafter contested its validity; second, the court, by its own language, had removed that matter from consideration in the proceeding.

Acknowledging that the parties had "continued on in prosecuting the case all along" despite the final judgment, the court decided to proceed with the trial.[1] After

---

[1] As the court commented: "You know, because maybe the lawyers didn't do what I think they should have done doesn't prevent me as a judge from giving you a legal opinion as to what—where I think I'm stuck. Okay?" By its earlier comments, however, the court made clear that it was not "stuck" as to the liability of both defendants, but rather as to Maureen Fanton only.

conducting what it termed the "evidentiary portion" of the trial, which focused solely on the validity of Maureen Fanton's signature on the credit application, the court posed the following proposition to counsel:

"The Court: All right. This is—this is the question, gentlemen: Do you want me to get to the meat of it or do you want me to decide this case on the basis of whether or not the judgment entered by Judge Holzberg in March, 2001, is dispositive?

"[The Defendant's Counsel]: Your Honor, on behalf of the defense, we believe the meat of it will get rid of it, and the legal argument will only give rise to appeals which will cost money.

"The Court: What do you say?

"[The Plaintiff's Counsel]: I would like to get to the meat of it, Your Honor.

"The Court: Okay. Then I'm in agreement, and I'm ready to make my decision from the bench. The court finds, first of all, that Maureen did not sign the credit application. The court finds that despite his protestations to the contrary, that David forged Maureen's signature on the credit application. The court finds that the plaintiff is entitled to a judgment against the defendant David Fanton only in the amount of $38,705.40 principal, interest through June 12, 2002, totaling $17,049.73. The court finds that a reasonable attorney's fee is $11,000 plus costs subject to the filing of a bill of costs. Therefore, judgment shall enter for the plaintiff as to the defendant David Fanton in that amount. . . . That is the judgment of the court.

"[The Defendant's Counsel]: If Your Honor pleases, the judgment has already been entered as to David on a stipulated judgment over a year ago from . . . .

"The Court:—because I have, by agreement of both counsel, effectively decided this on its merits. I am not holding Judge Holzberg's judgment as being binding. And that is the order of this court."

With that, the court vacated the order of March 2, 2001. We conclude that the court lacked authority to do so.

General Statutes § 52-212a provides in relevant part: "[A] civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed. . . ."[2] In *Kim* v. *Magnotta*, 249 Conn. 94, 104, 733 A.2d 809 (1999), our Supreme Court clarified that "§ 52-212a operates as a constraint, not on the trial court's jurisdictional authority, but on its substantive authority to adjudicate the merits of the case before it." Here, no motion to open and vacate the judgment was ever made by any party at any time.[3]

In vacating the judgment of March 2, 2001, the court asserted that it had "by agreement of both counsel,

[2] See also Practice Book § 17-4 (a), which provides: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, any civil judgment or decree rendered in the superior court may not be opened or set aside unless a motion to open or set aside is filed within four months succeeding the date on which notice was sent. The parties may waive the provisions of this subsection or otherwise submit to the jurisdiction of the court."

[3] In *Gardner* v. *Pilato*, 44 Conn. App. 724, 692 A.2d 843, cert. denied, 241 Conn. 922, 696 A.2d 1265 (1997), we were presented with the question of whether "a trial court, on its own motion, has the power to open a judgment of dismissal more than four months after the judgment was rendered when it is clear that the judgment was originally rendered because of an administrative mistake and a timely motion to open had previously been made and denied." Id., 725. *Gardner* is distinguishable from the present case because it authorizes a court to open a judgment, after it has denied a timely filed motion, to correct an administrative mistake that visits injustice on a party. Here, no party ever filed a motion to open the judgment, nor were they harmed by an administrative mistake.

effectively decided this on its merits." Our review of the record leads us to conclude otherwise.

First, all parties at trial agreed that the judgment against David Fanton was final. As the plaintiff's counsel conceded: "I'm not looking to reopen. I'll accept my judgment against David Fanton." Second, prior to proceeding with the trial and inquiring whether the parties wanted to "get to the meat of it," the court determined that "[David] accepted the offer of judgment . . . . You come here now saying they had no right to vary your offer. I say to you, once Judge Holzberg entered the order of judgment as to David, you're barred, you're legally estopped."

Thus, the sole issue remaining when the trial resumed was the liability of Maureen Fanton.[4] After hearing testimony from the plaintiff's credit manager and both defendants as to whether Maureen Fanton had signed the credit application, the court proffered the following query to the parties: "[D]o you want me to get to the meat of it or do you want me to decide this case on the basis of whether or not the judgment entered Judge Holzberg, in March, 2001, is dispositive?" When read in the context of the entire proceeding of June 12, 2002, it becomes apparent that when the parties consented to "get to the meat of it," they were consenting only to

[4] The plaintiff also argues that under *Blakeslee Arpaia Chapman, Inc.* v. *EI Constructors, Inc.*, 239 Conn. 708, 687 A.2d 506 (1997), both defendants were required to accept the offer of judgment. It is uncontested that David Fanton did so. Following that acceptance, the plaintiff filed no motion and raised no argument that this acceptance was invalid; rather, the plaintiff proceeded with its action against Maureen Fanton, culminating with the trial of June 12, 2002. At trial, the plaintiff insisted that it had accepted its judgment against David Fanton. When the plaintiff then accepted the court's offer to determine the liability of Maureen Fanton, it waived the claim that she was bound by the offer of judgment. See *MacKay* v. *Aetna Life Ins. Co.*, 118 Conn. 538, 547–48, 173 A. 783 (1934); *General Accident Ins. Co. of America* v. *Powers, Bolles, Houlihan & Hartline, Inc.*, 50 Conn. App. 701, 711–12, 719 A.2d 77 (1998), aff'd, 251 Conn. 56, 738 A.2d 168 (1999).

the court's determination of Maureen Fanton's liability.[5] The moment the court rendered its decision, the defendants' counsel immediately objected on the ground that a final judgment already had been entered against David Fanton.

On the basis of our review of the record, we conclude that the parties never consented to the court's opening and setting aside of the order of judgment of March 2, 2001, as to David Fanton. The court was therefore without authority to vacate that judgment. Accordingly, the judgment as to David Fanton is reversed and the matter is remanded with direction to reinstate the March 2, 2001 judgment in favor of the plaintiff against him.

## II

On cross appeal, the plaintiff claims that, pursuant to Practice Book § 13-23, Maureen Fanton's failure to deny specifically the matters in its request for admissions required the court to treat her responses as binding admissions. We disagree.

"It is a well established principle of law that the trial court may exercise its discretion with regard to evidentiary rulings . . . . [They] will be overturned on appeal only where there was an abuse of discretion and a showing by the [appellant] of substantial prejudice or injustice." (Citation omitted; internal quotation marks omitted.) *Baughman* v. *Collins*, 56 Conn. App. 34, 35–36, 740 A.2d 491 (1999), cert. denied, 252 Conn. 923, 747 A.2d 517 (2000).

---

[5] We note that in *Blakeslee Arpaia Chapman, Inc.* v. *EI Constructors, Inc.*, 239 Conn. 708, 743 n.38, 687 A.2d 506 (1997), our Supreme Court stated in dictum that "if the offer of judgment is satisfied, by A and B collectively or by A or B unilaterally, the case would be terminated as against both defendants." Nevertheless, such termination would not foreclose the parties from agreeing to open the judgment, however obtained, pursuant to General Statutes § 52-212a.

The request for admissions is an instrument of discovery. Requests for admissions are governed by Practice Book §§ 13-22 through 13-25. Section 13-23 (a) mandates in relevant part that "[e]ach matter of which an admission is requested is admitted unless, within thirty days after the filing of the notice required by Section 13-22 (b), or within such shorter or longer time as the judicial authority may allow, the party to whom the request is directed files and serves upon the party requesting the admission a written answer or objection addressed to the matter . . . . The answer shall specifically deny the matter or set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter. . . ." A party's response to a request for admissions is binding as a judicial admission unless the judicial authority permits withdrawal or amendment. See Practice Book § 13-24; see also C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 2.3.3, p. 22. Similarly, a failure to respond timely to a request for admissions "means that the matters sought to be answered were conclusively admitted." 2 E. Stephenson, Connecticut Civil Procedure (3d Ed. 2002) § 124 (e), p. 121. Once a response has been filed, the party who has requested the admission may file a motion to determine the sufficiency of the answer or objection. See Practice Book § 13-23 (b).

On January 19, 2001, the plaintiff served on the defendants a request for admissions. The defendants responded on January 25, 2001. For roughly half of the eleven specified queries, the response was "admit as to David Fanton only." The accompanying notice of filing stated in relevant part that "[t]he defendants . . . have on this date filed their responses" and was signed by their attorney on behalf of "[t]he defendants."

The plaintiff contends that as Maureen Fanton never explicitly replied to the request for admissions, her failure to do so must be deemed an admission. We recog-

nize that Maureen Fanton's answer did not "specifically deny the matter"; Practice Book § 13-23 (a); and, thus, failed to comply with the precise dictates of Practice Book § 13-23. The particularities of the litigation, however, forestall the fatality of that matter due to mere procedural defect.

The response "admit as to David Fanton only" contained an implicit denial on the part of Maureen Fanton. The accompanying notice of filing stated in relevant part that "[t]he *defendants* . . . have on this date filed *their* responses" and was signed by their attorney on behalf of "[t]he *defendants*." (Emphasis added.) Moreover, Maureen Fanton that very day filed a disclosure of her special defenses, which directly refuted the statements at issue in the plaintiff's request for admissions.[6] That filing provided notice to the plaintiff that Maureen Fanton was contesting her liability as to those specified issues.

In this case, the response to the request for admissions filed by the defendants was ambiguous, while Maureen Fanton's filing of special defenses at the same time indicated a denial on her part. It was therefore incumbent on the plaintiff, as the party who had requested the admissions, to "move to determine the sufficiency of the answer or objection. . . ." Practice Book § 13-23 (b). The plaintiff made no such motion in this case, nor did it contact the defendants to discuss the apparent ambiguity. In light of the facts of this particular case, we conclude that Maureen Fanton sufficiently complied with the dictates of our rules of practice.[7] The court did not abuse its discretion, therefore,

---

[6] The special defenses were that she never signed the credit application agreement and that her name was crossed off as a guarantor.

[7] We note the governing principle of Practice Book § 1-8, which provides: "The design of these rules being to facilitate business and advance justice, they will be interpreted liberally in any case where it shall be manifest that a strict adherence to them will work surprise or injustice."

by not treating Maureen Fanton's "response" as an admission.

The judgment is affirmed as to Maureen Fanton and reversed as to David Fanton and the case is remanded with direction to reinstate the judgment of March 2, 2001, in favor of the plaintiff as against David Fanton.

In this opinion the other judges concurred.