******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

TAMI G. STRAUSS *v*. MARK E. STRAUSS
(AC 44693)

Bright, C. J., and Elgo and Suarez, Js.

*Syllabus*

The defendant, whose marriage to the plaintiff previously had been dissolved, appealed to this court from the judgment of the trial court denying his postjudgment motion to vacate a series of orders finding him in contempt for his failure to comply with the parties' separation agreement, which had been incorporated into the judgment of dissolution. The plaintiff filed two motions for contempt in 2014, alleging that the defendant failed to comply with the court's orders that had been issued in response to her fifteen prior motions for contempt. The defendant failed to appear for a hearing on the 2014 motions, and the court found him in contempt for his failure to provide to the plaintiff his life insurance information, to pay child support, to contribute to certain required expenses and to pay her attorney's fees. At a subsequent hearing, the court incarcerated the defendant for one week for his failure to purge the contempt. After a third hearing in 2014, the court found that the defendant was still in contempt and issued additional orders, from which the defendant neither appealed nor filed a motion to reargue. In 2019, the plaintiff filed another motion for contempt. In 2020, the defendant filed a motion to vacate the 2014 contempt orders, arguing that the orders were issued, and he was incarcerated, in violation of his constitutional rights because he was absent from the initial 2014 hearing due to a serious heart condition. The court denied the motion to vacate, concluding that it lacked the authority to overturn a judgment of contempt rendered five years previously when the defendant alleged the court committed error in its judgment. Thereafter, the court denied the defendant's motion to stay the trial court proceedings during the pendency of this appeal. *Held*:

1. The defendant could not prevail on his claim that the trial court incorrectly concluded that it did not have the authority to vacate the 2014 contempt orders, which was based on his claim that a court retains inherent equitable authority to vacate a contempt order beyond the four month deadline imposed by the applicable statute (§ 52-212a) and rule of practice (§ 17-4 (a)): although trial courts have limited continuing authority to vacate an order of civil contempt on the ground that the contemnor purged the contempt, nothing in the case law relied on by the defendant suggested that courts have continuing authority to vacate a civil contempt finding on any other basis, and the defendant did not seek to vacate the 2014 contempt orders because he purged the contempt but, rather, because the court improperly found him in contempt; moreover, although trial courts have continuing authority to effectuate prior judgments, courts are not permitted to substantively modify or correct prior judgments, and, in this case, the defendant's motion to vacate did not seek to vindicate the 2014 orders but, rather, to vitiate them.

2. This court declined to review the defendant's claim that the trial court improperly denied his motion to stay the proceedings during the pendency of this appeal; the defendant's claim was not properly before this court because the defendant failed to file a motion for review of the trial court's decision pursuant to the applicable rule of practice (§ 66-6), and, although the defendant characterized his motion to stay not as a request for an appellate stay but, instead, as a request that the court continue a hearing on the 2019 motion for contempt until the conclusion of this appeal, this characterization was belied by the relief sought in his motion to stay and the claims raised in his principal appellate brief challenging the court's actions regarding the appellate stay.

Argued November 7, 2022—officially released June 27, 2023

*Procedural History*

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial dis-

trict of Danbury, where the court, *Hon. Sidney Axelrod*, judge trial referee, rendered judgment dissolving the marriage and granting certain other relief in accordance with the parties' separation agreement; thereafter, the court, *Winslow, J.*, found the defendant in contempt; subsequently, the court, *Hon. Heidi G. Winslow*, judge trial referee, denied the defendant's motion to open and vacate the court's findings of contempt, and the defendant appealed to this court; thereafter, the court, *Nascimento, J.*, denied the defendant's motion to stay the proceedings, and the defendant filed an amended appeal. *Affirmed.*

*James P. Sexton*, with whom were *Thomas D. Colin*, and, on the brief, *Megan L. Wade*, for the appellant (defendant).

*Alexander Copp*, with whom was *Rachel A. Pencu*, for the appellee (plaintiff).

*Opinion*

ELGO, J. The defendant, Mark E. Strauss, appeals from the judgment of the trial court denying his postjudgment motion to vacate a series of orders finding him in contempt for his failure to comply with a separation agreement that he entered into with the plaintiff, Tami G. Strauss, in connection with the underlying judgment dissolving their marriage. On appeal, the defendant claims that the court improperly (1) concluded that it lacked authority to vacate its prior contempt orders, and (2) denied his motion to stay the trial court proceedings during the pendency of this appeal. We affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant to our resolution of this appeal. In September, 2006, the court dissolved the marriage of the parties. The court incorporated into the judgment of dissolution the parties' comprehensive separation agreement (agreement). With respect to the parties' daughter, who was born in 2000, the agreement required that the defendant pay to the plaintiff weekly child support and to contribute a percentage of expenses, including day care, summer camp, insurance, and unreimbursed medical expenses. The agreement also required the defendant to maintain life insurance, naming the plaintiff as trustee and their daughter as the beneficiary, and to furnish proof of this insurance to the plaintiff at her request, no more than twice annually.

Between 2007 and 2011, the parties engaged in a protracted contest regarding their obligations pursuant to the agreement, which resulted in more than 100 docket entries. During that time period, the plaintiff filed at least fifteen motions for contempt requesting that the defendant comply with his obligations pursuant to the agreement. The court granted relief with respect to at least five of the plaintiff's motions for contempt and ordered, inter alia, that the defendant provide to the plaintiff (1) past due child support, day care expenses, camp expenses, health insurance premiums, unreimbursed medical expenses, (2) proof of life insurance, and (3) attorney's fees incurred in the prosecution of the motions. The case then was dormant for three years.

On April 9, 2014, the plaintiff filed another motion for contempt in which she outlined the extensive procedural history of the case and contended that the defendant had failed to comply with the court's prior orders issued in response to her fifteen prior motions for contempt. As for relief, the plaintiff requested that the court order the defendant to pay her $112,573.53, which amount represented past due child support, day care expenses, camp expenses, health insurance premiums, unreimbursed medical expenses, and attorney's fees. The plaintiff also requested that the defendant be ordered to provide her with proof of life insurance, and

that the defendant be incarcerated until he complied with the court's orders.

On June 30, 2014, the court held a hearing on the plaintiff's motion for contempt. At the hearing, the defendant requested a brief continuance so that he could retain counsel,[1] and so that he could produce an updated financial affidavit because his financial situation was, in his view, "particularly complex . . . ." The court orally granted the defendant's request and continued the hearing on the motion for contempt to August 4, 2014. Also on June 30, 2014, the court issued an order requiring the defendant to pay child support by immediate wage withholding, produce certain financial documents to the plaintiff, and provide an updated financial affidavit by July 14, 2014. On July 25, 2014, the plaintiff filed another motion for contempt on the ground that the defendant failed to provide anything to the plaintiff in violation of the court's June 30, 2014 order. After several continuances at the request of the defendant, the court scheduled the hearing on the plaintiff's April 9 and July 25, 2014 motions for contempt for September 2, 2014, at 9:30 a.m.

Only the plaintiff and her counsel appeared at the September 2, 2014 hearing.[2] At the hearing, the plaintiff testified that the defendant had failed to comply with the terms of the agreement and the court's previous contempt orders. The plaintiff also testified that the defendant did not provide any documents in response to the court's June 30, 2014 order. On the same date, the court issued a written order finding the defendant in contempt for his failure to provide to the plaintiff his life insurance information, to pay child support, to contribute the required childcare expenses, and to pay her attorney's fees. The court ordered the defendant to be incarcerated, but it stayed the order for three weeks, until September 22, 2014, to provide the defendant an opportunity to purge the full amount that he owed to the plaintiff, $145,578.36.

On September 22, 2014, both parties appeared for a hearing to determine whether the defendant had purged the contempt. The defendant explained that he was unable to attend the September 2, 2014 hearing and offered to present medical documents supporting his absence. The court said it would "make a note of it," incarcerated the defendant because he failed to satisfy the purge amount, set his bond at $10,000, and continued the matter for one week.

On September 29, 2014, after the defendant had been incarcerated for one week, the parties appeared for another hearing. The defendant requested that the court lift the bond so that he could be released from incarceration and have time to speak to an attorney and to negotiate a payment schedule to settle his outstanding arrearage. The court did not modify its finding of contempt, but it lifted the bond and continued the matter for fifteen

days to permit the defendant an opportunity to provide proof of life insurance, to make arrangements to pay the plaintiff, and to obtain an attorney. The court warned the defendant that he should make his best efforts to resolve this matter or else he would be at risk of being incarcerated again.[3]

On October 14, 2014, the parties again appeared before the court. At the hearing, the defendant provided to the plaintiff $1000 as a contribution toward the arrearage and presented satisfactory proof that he maintained life insurance. The defendant explained that, despite his poor financial circumstances, he actively was seeking employment and offered to prospectively pay the plaintiff $1000 per month to satisfy the arrearage. The defendant also entered into evidence a letter authored by his physician, which explained his cardiovascular condition. See footnote 2 of this opinion. At the conclusion of the hearing, the court found that the defendant was still in contempt due to his inadequate efforts to contribute toward the substantial arrearage that he owed to the plaintiff. The court additionally ordered the defendant to pay the plaintiff $1248.20 per month. The defendant did not file an appeal from or a motion to reargue the court's September 2, 22, and 29, and October 14, 2014 contempt orders (collectively, 2014 contempt orders).

Approximately five years later, on September 13, 2019, the plaintiff filed another motion for contempt contending that the defendant had failed and refused to remit the $1248.20 monthly payments to her. The plaintiff represented that the outstanding amount totaled $222,205.71, which accounted for sporadic payments made by the defendant. On January 22, 2020, the defendant filed an opposition contending that the plaintiff could not prove that he wilfully violated any of the court's orders.

On January 22, 2020, the defendant filed a motion to vacate the court's 2014 contempt orders. The defendant argued that the 2014 contempt orders were issued, and he was incarcerated for one week, in violation of his constitutional rights because he was absent from the September 2, 2014 hearing due to a serious heart condition.

On January 22, 2020, the court heard arguments on the defendant's motion to vacate.[4] The plaintiff's counsel argued that the court should deny the motion to vacate because the court lacked the authority to vacate the 2014 contempt orders on the basis that those orders were entered more than five years ago, well beyond the four month time limitation for opening or setting aside a judgment pursuant to General Statutes § 52-212a.[5] In response, the defendant's counsel argued that the court had authority to consider the defendant's motion to vacate because the 2014 contempt orders were "fundamentally flawed" and "constitutionally

infirm . . . ." The defendant's counsel also argued that the court has inherent authority to correct its judgments at any point in time. The court orally denied the motion to vacate, stating that, even if the contempt orders improperly were entered, there was "no basis in law, fact or procedure for a motion to vacate five years after the fact."

On February 11, 2020, the defendant filed a motion to reargue the court's decision denying his motion to vacate. The defendant argued that the court has inherent authority to vacate the 2014 contempt orders as part of its power to vindicate prior judgments. The plaintiff filed an objection, arguing that the court should deny the motion to reargue because there was no basis to vacate the 2014 contempt orders five years after they were entered. After a hearing, on September 28, 2020, the court granted the defendant's motion to reargue and vacated its January 22, 2020 order denying the defendant's motion to vacate. The court stated that, "[u]pon reconsideration, the court agrees with the defendant that the court does have jurisdiction and continuing inherent authority to modify or vacate prior findings and rulings entered to enforce the court's judgments." Accordingly, the court scheduled an evidentiary hearing on the defendant's motion to vacate for October 27, 2020, which was continued to May 26, 2021.

Prior to that scheduled hearing, the court issued a memorandum of decision, dated April 28, 2021, in which it denied the defendant's motion to vacate.[6] The court concluded that it lacked the "authority to overturn and rehear a judgment of contempt rendered five years previously when the contemnor alleges the court committed error in the judgment." The court reasoned that the remedy for the defendant to challenge the 2014 contempt orders was to file an appeal, a motion to reargue, or a timely motion to open those orders in 2014. The court further held that, although there are statutes that permit the opening and modification of judgments in the "family law arena"—General Statutes §§ 46b-56, 46b-63, 46b-65, 46b-84, and 46b-86—none of these apply to a contempt order. This appeal followed.

During the pendency of this appeal, on February 24, 2022, the defendant filed with the trial court a motion to stay, pursuant to Practice Book § 61-11, in which he requested that the court either "[1] clarify that an automatic stay precludes the plaintiff or the court from [taking] any action on the plaintiff's September 13, 2019 motion for contempt, which seeks enforcement of [the] 2014 contempt orders, or, alternatively, to [2] order that any action regarding the plaintiff's September 13, 2019 motion for contempt be stayed during the pendency of the defendant's appeal."[7] On April 27, 2022, the plaintiff filed a memorandum of law in opposition contending that there is no appellate stay in effect and, alternatively, that there was no basis for the imposition of a discre-

tionary appellate stay.

On May 17, 2022, the trial court, after hearing arguments from both parties, orally denied the defendant's motion to stay. The court reasoned that an automatic stay did not apply because Practice Book § 61-11 (c) exempts family matters from the automatic appellate stay. The court also held that a discretionary appellate stay was not appropriate because it was not sufficiently likely that the defendant would prevail in this appeal. The defendant filed an amended appeal to challenge this order. Additional facts will be set forth as necessary.

I

The defendant first claims that the court improperly concluded that it lacked authority to vacate the 2014 contempt orders. Specifically, the defendant argues that, although § 52-212a and Practice Book § 17-4 (a) require that a motion to vacate be filed within four months after the notice of the judgment it seeks to vacate was sent, a court retains inherent equitable authority to vacate a contempt order beyond this four month deadline. He contends that a trial court retains authority, in perpetuity, to vacate a judgment of contempt on the ground that the contemnor improperly was found in contempt. We disagree.

We begin with the standard of review and relevant legal principles. Whether the trial court had the authority to vacate a judgment is a question of law over which we exercise plenary review. See *Wells Fargo Bank, N.A.* v. *Treglia,* 156 Conn. App. 1, 9, 111 A.3d 524 (2015); *East Haven Builders Supply, Inc.* v. *Fanton*, 80 Conn. App. 734, 737, 837 A.2d 866 (2004).

"Generally, courts recognize a compelling interest in the finality of judgments which should not lightly be disregarded. Finality of litigation is essential so that parties may rely on judgments in ordering their private affairs and so that the moral force of court judgments will not be undermined. The law favors finality of judgments . . . . This court has emphasized that due consideration of the finality of judgments is important and that judgments should only be set aside or opened for a strong and compelling reason. . . . It is in the interest of the public as well as that of the parties [that] there must be fixed a time after the expiration of which the controversy is to be regarded as settled and the parties freed of obligation to act further in the matter by virtue of having been summoned into or having appeared in the case. . . . Without such a rule, no judgment could be relied on." (Citations omitted; internal quotation marks omitted.) *Ruiz* v. *Victory Properties, LLC*, 180 Conn. App. 818, 828, 184 A.3d 1254 (2018).

"Although it is undisputed that courts of general jurisdiction have the inherent power to open, correct, or modify their own judgments, the *duration* of this power is restricted by statute and rule of practice." (Emphasis

added; internal quotation marks omitted.) Id., 829. In particular, both § 52-212a and Practice Book § 17-4 constrain "the trial court's general authority to grant relief from a final judgment" by mandating that a motion to open or to set aside must be filed within four months following the date on which the notice of judgment was sent. See id.; see also *D2E Holdings, LLC* v. *Corp. for Urban Home Ownership of New Haven*, 212 Conn. App. 694, 718, 277 A.3d 261, cert. denied, 345 Conn. 904, 282 A.3d 981 (2022). Section 52-212a provides in relevant part: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which the notice of judgment or decree was sent. . . ." Likewise, Practice Book § 17-4 (a) provides: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, any civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months succeeding the date on which notice was sent. The parties may waive the provisions of this subsection or otherwise submit to the jurisdiction of the court."[8]

In the present case, the defendant filed his motion to vacate in January, 2020, more than five years after the 2014 contempt orders he sought to vacate. Recognizing that his motion to vacate was filed far beyond the four month limitation, the defendant argues that a trial court retains authority to vacate a judgment beyond the four month limitation on two different grounds.[9] First, he contends that a trial court retains authority to vacate a contempt order at any point in time. Second, he argues that a trial court has inherent equitable authority to vacate a contempt order so as to vindicate an underlying dissolution decree.

With respect to his first argument, the defendant relies exclusively on a quotation from *Eric S.* v. *Tiffany S.*, 143 Conn. App. 1, 9, 68 A.3d 139 (2013), in which this court stated: "After a finding of civil contempt, the court retains jurisdiction to vacate the finding or to give the contemnor the opportunity to purge the contempt by later compliance with a court order." (Internal quotation marks omitted.) Id., quoting *Monsam* v. *Dearington*, 82 Conn. App. 451, 456–57, 844 A.2d 927 (2004). We do not read this quotation, in isolation, as extending a court's continuing authority to vacate a contempt order, in perpetuity, on the basis that the contemnor contends they improperly were found in contempt. Instead, reading *Eric S.* and *Monsam* together, this quotation properly is understood as affording a trial court limited continuing authority to vacate an order of civil contempt on the *specific* ground that the contemnor has purged the contempt.

In both *Eric S.* and *Monsam*, this court articulated the distinction between criminal contempt and civil contempt. As for civil contempt, this court held that a contemnor has the opportunity to purge the contempt by later compliance with a trial court's order and, consequently, the trial court retains continuing authority to vacate a judgment of civil contempt on that basis because "[c]ivil contempt is designed to compel future compliance" and a trial court has the power to incarcerate contemnors in civil contempt cases until they purge themselves. *Eric S.* v. *Tiffany S.*, supra, 143 Conn. App. 9–11; *Monsam* v. *Dearington*, supra, 82 Conn. App. 456–57. On the other hand, criminal contempt is punitive in nature and the contemnor has no opportunity to purge the contempt and, thus, a trial court has no continuing authority to vacate a sentence imposed as a result of a criminal contempt. *Eric S.* v. *Tiffany S.*, supra, 10–11; *Monsam* v. *Dearington*, supra, 458–59. Accordingly, the applicable rule drawn from *Eric S.* and *Monsam* is that a trial court retains limited continuing authority to vacate a civil contempt finding if the contemnor purges the contempt. Nothing in these cases suggests that the court has continuing authority to vacate a civil contempt finding on any other basis.

It is logical that a trial court would retain limited continuing authority to vacate a contempt order to permit the contemnor the opportunity to purge the contempt because a purge of contempt does not automatically vacate a contempt order. "[A] finding of contempt is not necessarily vacated because the violator has purged himself. On the contrary, a contempt finding has collateral consequences, even when no longer active, unless or until it is vacated or rendered invalid." (Internal quotation marks omitted.) *Johnson* v. *Clark*, 113 Conn. App. 611, 619, 967 A.2d 1222 (2009); see also *Kendall* v. *Pilkington*, 253 Conn. 264, 278 n.7, 750 A.2d 1090 (2000). "Although it could do so, a court is not required, however, to vacate its judgment after a contemnor has purged himself or herself of the contemptuous acts." *Hall* v. *Hall*, 182 Conn. App. 736, 755 n.11, 191 A.3d 182 (2018), aff'd, 335 Conn. 377, 238 A.3d 687 (2020).

Here, the defendant, in his motion to vacate, did not seek to vacate the 2014 contempt orders because he had purged his contempt but, rather, because the court improperly found him in contempt. Therefore, the defendant's motion did not fall within the court's continuing authority to vacate a contempt order pursuant to *Eric S.* and *Monsam*. The defendant has provided us with no authority, and we have found none, extending a court's continuing authority to vacate a contempt order in perpetuity on the basis that the contemnor contends that he improperly was found in contempt. This court, in fact, has previously held to the contrary. See, e.g., *CFM of Connecticut, Inc.* v. *Chowdhury*, 38

Conn. App. 745, 749, 662 A.2d 1340 (1995) (trial court lacked authority to vacate sanctions order stemming from motion for contempt three years after finding of contempt because parties did not waive provisions of § 52-212a or otherwise submit to jurisdiction of trial court), aff'd, 239 Conn. 375, 685 A.2d 1108 (1996). In light of the compelling interest in the finality of judgments; *Ruiz* v. *Victory Properties, LLC*, supra, 180 Conn. App. 828; we decline to extend the court's limited continuing authority to vacate a contempt finding in perpetuity on the basis that the contempt finding was improper. Consequently, we disagree with the defendant's first argument.

With respect to his second argument, the defendant is correct that a trial court has continuing authority to effectuate its prior judgments. "[T]he trial court's continuing jurisdiction to effectuate its prior judgments, either by summarily ordering compliance with a clear judgment or by interpreting an ambiguous judgment and entering orders to effectuate the judgment as interpreted, is grounded in its inherent powers, and is not limited to cases wherein the noncompliant party is in contempt, family cases, cases involving injunctions, or cases wherein the parties have agreed to continuing jurisdiction." *AvalonBay Communities, Inc.* v. *Plan & Zoning Commission*, 260 Conn. 232, 246, 796 A.2d 1164 (2002). "Although ordinarily our trial courts lack jurisdiction to act in a case after the passage of four months . . . there are exceptions. One exception arises when the exercise of jurisdiction is necessary to effectuate prior judgments or otherwise enforceable orders." (Internal quotation marks omitted.) *Veneziano* v. *Veneziano*, 205 Conn. App. 718, 728, 259 A.3d 28 (2021); see also *Tracey* v. *Miami Beach Assn.*, 216 Conn. App. 379, 397, 288 A.3d 629 (2022) (trial court has equitable powers to fashion whatever orders are required to protect integrity of earlier judgment), cert. denied, 346 Conn. 919, 291 A.3d 1040 (2023).

Conversely, a trial court's continuing authority to effectuate its judgments beyond the four month period does not permit it to substantively modify or correct its prior judgments. See, e.g., *Almeida* v. *Almeida*, 190 Conn. App. 760, 765, 213 A.3d 28 (2019). "This court has explained the difference between postjudgment orders that modify a judgment rather than effectuate it. A modification is [a] change; an alteration or amendment which introduces new elements into the details, or cancels some of them, but leaves the general purpose and effect of the subject-matter intact. . . . In contrast, an order effectuating an existing judgment allows the court to protect the integrity of its original ruling by ensuring the parties' timely compliance therewith." (Internal quotation marks omitted.) *Walzer* v. *Walzer*, 209 Conn. App. 604, 615, 268 A.3d 1187, cert. denied, 342 Conn. 907, 270 A.3d 693 (2022); see also *Cunningham* v. *Cunningham*, 204 Conn. App. 366, 374, 254 A.3d 330 (2021).

In the present case, the defendant's motion to vacate did not seek to effectuate, vindicate, or protect the integrity of the 2014 contempt orders. To the contrary, the defendant's motion to vacate sought to do the complete opposite, namely, to vitiate the 2014 contempt orders. Therefore, the trial court did not have continuing authority to grant the motion to vacate because it represented an attempt to void, not to effectuate, the substantive terms of the 2014 contempt orders. We reject the defendant's second argument on this basis.

In sum, if the defendant wanted to challenge the court's 2014 contempt orders, his remedy was to file a timely appeal, a timely motion to reargue, or a motion to open or vacate within the four months following the 2014 contempt orders. The defendant having forgone those options, the trial court lacked the authority to vacate those orders on the ground that it had five years earlier improperly found the defendant in contempt. We therefore conclude that the court properly denied the defendant's motion to vacate.

## II

The defendant also claims that the trial court improperly denied his motion to stay the trial court proceedings during the pendency of this appeal. Specifically, the defendant argues that the court improperly concluded that there was no automatic appellate stay in effect pursuant to Practice Book § 61-11 and, alternatively, that the court improperly declined to impose a discretionary appellate stay. In response, the plaintiff contends that this court should decline to review this claim because a claim regarding an appellate stay cannot be raised on direct appeal.[10] We agree with the plaintiff and, accordingly, decline to review the defendant's claim.

"Pursuant to Practice Book § 61-14, [t]he sole remedy of any party desiring the court to review an order concerning a stay of execution shall be by motion for review under Section 66-6. Issues regarding a stay of execution cannot be raised on direct appeal." (Internal quotation marks omitted.) *Doe* v. *Bemer*, 215 Conn. App. 504, 528, 283 A.3d 1074 (2022). "Practice Book § 66-6 requires that [m]otions for review . . . be filed within ten days from the issuance of notice of the order sought to be reviewed. . . . If a party does not file a motion for review, that party is precluded from challenging the court's stay order by means of a direct appeal." (Internal quotation marks omitted.) *De Almeida-Kennedy* v. *Kennedy*, 207 Conn. App. 244, 258, 262 A.3d 872 (2021).

As outlined previously, on February 24, 2022, the defendant filed with the trial court a motion to stay pursuant to Practice Book § 61-11, in which he requested that the trial court either "[1] clarify that an automatic stay precludes the plaintiff or the court from [taking] any action on the plaintiff's September 13, 2019 motion for contempt, which seeks enforcement of [the]

2014 contempt orders, or, alternatively, to [2] order that any action regarding the plaintiff's September 13, 2019 motion for contempt be stayed during the pendency of the defendant's appeal." On May 17, 2022, the trial court, after hearing arguments from both parties, orally denied the defendant's motion to stay. The defendant filed an amended appeal to challenge this order, but he did not file a motion for review with respect to the court's denial of his motion to stay.

Applying the foregoing principles, we conclude that the defendant improperly presented this issue for resolution on direct appeal because he failed to file a motion for review of the trial court's decision denying his motion to stay. See, e.g., *U.S. Bank, National Assn.* v. *Bennett*, 195 Conn. App. 96, 110 n.4, 223 A.3d 381 (2019); *Lawrence* v. *Cords*, 165 Conn. App. 473, 479–80, 139 A.3d 778, cert. denied, 322 Conn. 907, 140 A.3d 221 (2016); *Clark* v. *Clark*, 150 Conn. App. 551, 576, 91 A.3d 944 (2014). In his appellate reply brief, the defendant characterizes his motion to stay not as a request for an appellate stay but, instead, as a request that the court continue a hearing on the plaintiff's September 13, 2019 motion for contempt until after this appeal concluded. This characterization is belied by the relief sought in his motion to stay and the appellate claims in his principal appellate brief challenging the court's actions regarding the appellate stay. We therefore decline to review his claim.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Although it is not clear from the trial court file, the defendant was represented by counsel from the outset of this dissolution action through April, 2009. The defendant then proceeded as a self-represented party from April, 2009, through May, 2015, when he again retained counsel.

[2] According to a memorandum to the trial court file authored by a temporary assistant clerk, the defendant called to inform the caseflow coordinator on the morning of the September 2, 2014 hearing that he would not be in attendance because he suffered a cardiovascular event that required emergency medical treatment. At 9:32 a.m., the caseflow coordinator conveyed the defendant's message to the clerk via email, however, the clerk did not read the email until noon during a recess. The clerk then informed the court of the defendant's message, but the matter already had been heard and the orders already had been issued.

At a hearing on October 14, 2014, the defendant entered into evidence a letter authored by the defendant's physician, Robert Labarre, of Cardiology Physicians of Fairfield County, LLC, addressing the defendant's cardiovascular condition. The letter explained that, on August 5, 2014, the defendant was sent from his oral surgeon's office to Stamford Hospital because he had very low blood pressure, and was near syncope, sweaty, and feeling dizzy. On the morning of September 2, 2014, the defendant called his physician before admitting himself to Stamford Hospital because he was suffering from similar conditions to those he experienced on August 5, 2014. The defendant then proceeded to the Cardiology Physicians of Fairfield County, LLC, where an echocardiogram revealed a severe left ventricular outflow obstruction, and that his blood pressure was significantly elevated. The defendant was discharged with instructions to take prescribed medication, go home, rest, and not to drive.

[3] Particularly, the court stated: "By the way, I have a relative who has [a medical] condition very similar to the health description that you gave me last time, so, I'm aware of what can or cannot be done with regard to your health issue. It's one of the reasons I had no hesitation about incarcerating you this past week. I do not want to hear any excuse whatsoever. You will

be here on October 14 without fail." Although the propriety of this comment is not at issue in this appeal, we emphasize that "attitudes garnered from personal life experience cannot serve as a substitute for properly admitted evidence . . . ." *Schimenti* v. *Schimenti*, 181 Conn. App. 385, 402, 186 A.3d 739 (2018).

[4] The hearing initially was intended to be only for the plaintiff's September 13, 2019 motion for contempt; nevertheless, the parties agreed that the court should first decide the defendant's motion to vacate.

[5] We note that § 52-212a was amended effective June 28, 2021, after the events at issue in this appeal; see Public Acts 2021, No. 21-104, § 44; those amendments, however, have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[6] We note that this April 28, 2021 order was the result of an uncommon sequence of events. Although Judge Winslow issued the 2014 contempt orders, Judge Truglia made the initial rulings on the defendant's motion to vacate, including the initial denial of that motion, the vacatur of that denial, and the scheduling of an evidentiary hearing on the motion. Then, it was Judge Winslow who issued the April 28, 2021 decision denying the motion to vacate prior to the hearing ordered by Judge Truglia. In response to a motion for articulation filed by the plaintiff during the pendency of this appeal, Judge Winslow explained, "[b]ecause it was a contempt order by Judge Winslow in 2014, that the defendant wished to vacate, Judge Truglia decided, with the concurrence of Judge Winslow, that the latter was the appropriate judge to consider the defendant's motion to vacate . . . . Judge Winslow reviewed the file. Judge Winslow approached Judge Truglia to inquire whether he felt his reversal of his initial decision on the motion to vacate was in any way binding on Judge Winslow, and whether an evidentiary hearing was mandatory or necessary if Judge Winslow made a contrary finding. Judge Truglia responded that Judge Winslow was not in any way bound by his decision and there were no restrictions whatsoever." On August 16, 2021, the defendant filed an expedited motion for supervision seeking to have Judge Winslow removed from the case, which this court denied. Nevertheless, the defendant does not raise a legal claim on appeal challenging the manner in which Judge Winslow exercised control over the proceedings on the motion to vacate.

[7] Previously, on November 24, 2021, the defendant filed a motion to stay requesting that the trial court stay the proceedings before it on the plaintiff's September 13, 2019 motion for contempt pending the resolution of his appeal from the court's denial of his motion to vacate. The parties fully briefed this motion, and it was scheduled to be heard on May 17, 2022. No action was taken on the defendant's November 24, 2021 motion to stay because he later filed the February 24, 2022 motion to stay, which amended and superseded the November 24, 2021 motion to stay.

[8] Both § 52-212a and Practice Book § 17-4 (a), as well as the case law applying those provisions, characterize the issue as involving the trial court's "jurisdiction." Nevertheless, our Supreme Court has made clear that the four month rule pursuant to § 52-212a and Practice Book § 17-4 (a) "operates as a constraint, not on the trial court's jurisdictional authority, but on its substantive authority to adjudicate the merits of the case before it." *Kim* v. *Magnotta*, 249 Conn. 94, 104, 733 A.2d 809 (1999); see also *Wolfork* v. *Yale Medical Group*, 335 Conn. 448, 465–66, 239 A.3d 272 (2020) (recognizing "subtle, but critical, distinction" between trial court's authority and subject matter jurisdiction).

[9] "It is [also] well established that [a] judgment rendered may be opened after the four month limitation . . . if it is shown that the judgment was obtained by fraud, in the absence of actual consent, or because of mutual mistake." (Internal quotation marks omitted.) *Doe* v. *Bemer*, 215 Conn. App. 504, 514, 283 A.3d 1074 (2022). The defendant does not rely on these other exceptions to the four month limitation.

[10] On September 16, 2022, the plaintiff filed a motion to dismiss this aspect of the defendant's appeal on the same ground. On October 5, 2022, this court deferred decision on the plaintiff's motion to the panel considering the merits of the appeal. We now address the issue raised in the plaintiff's motion to dismiss, namely, whether the defendant improperly presented this claim for resolution on direct appeal because he failed to file a motion for review of the trial court's decision denying his motion to stay.